In the Matter of The WASHINGTON GROUP, INC., Convenient Systems, Inc., Washington Mills Company, Johnston Mills Company, Johnston Mills Export Company, Spinners Processing Company, Washington Weaving Company and Washington Mills Sales Corporation, Debtors.

Nos. B–77–695—B–77–699, B–77–700—B–77–702.

United States District Court, M. D. North Carolina, Winston-Salem Division.

Sept. 5, 1979.

John H. Northey, III, Lloyd C. Caudle, Charlotte, N.C., for David R. Johnston.

W. Donald Carroll, Jr., Charlotte, N.C., for The Northwestern Bank.

Roy G. Hall, Jr., Winston-Salem, N.C., for James R. Gilley.

Richard A. Gilbert, Winston-Salem, N.C., Trustee for Debtor Corporations.

William R. Sage, C. Edwin Allman, Winston-Salem, N.C., for appellees.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on appeal from an order of the Bankruptcy Court. The following two issues are presented: (1) whether in the circumstances of this case the Bankruptcy Judge erred in denying appellants an extension of time within which to file their appeal to this Court, and (2) whether the Bankruptcy Judge erred in allowing the Trustee in Bankruptcy to expend funds of the Debtors' estate to assist in defraying the costs of two potentially massive civil suits, in only one of which the Trustee is a named plaintiff, against former officers, directors, and fiduciaries of the Debtors. The three appellants, David R. Johnston, James R. Gilley, and the Northwestern Bank, are creditors and shareholders of the bankrupt companies. Jurisdiction is proper under Bankruptcy Rule 801 and 28 U.S.C. § 1334.

On June 20, 1977, Chapter X reorganization proceedings commenced with respect to the Washington Group, Inc. and its subsidiaries. R. A. Gilbert was appointed Trustee in Bankruptcy, and he immediately began his investigation and operation of the bankruptcy corporations. He filed his report to the Bankruptcy Court on June 30, 1978, and

in that report he included facts pertaining to potential causes of action available to the estate.

On July 21, 1978 and July 25, 1978, respectively, the Bankruptcy Judge entered orders that (1) authorized the Trustee to assist employees of the Debtors in securing compensation for losses occasioned by mismanagement of employee benefit plans, and (2) authorized the Trustee to sue on behalf of·the estate and to join with any other plaintiffs in such action. On July 25, 1978, two civil ι class actions relating to the affairs of the Debtors were filed in this court. *Gilbert v. Bagley*, C–78–335–WS, and *Fulk v. Bagley*, C–78–333–WS. *Gilbert* involves claims by the Trustee, on behalf of the Debtors, asserting waste, mismanagement, and breach of fiduciary duties by officers, directors, and other fiduciaries of the Debtors. Additionally, *Gilbert* includes claims by certain representative shareholders of the Debtor, The Washington Group, Inc., on behalf of a proposed class of such shareholders, based on alleged securities law fraud and related misconduct, as well as unlawful conduct during the pendency and settlement of an earlier shareholders' action. In *Fulk*, certain representative employees of the Debtors, on behalf of a proposed class of such employees, have asserted federal and common law claims arising out of abuses in the management of the debtor corporations' various employee benefit plans by directors, officers, and other fiduciaries of the Debtors. The Trustee is not a party in *Fulk*. Discovery relative to class certification issues has been completed in both actions. General discovery, however, has been stayed pending resolution of a criminal action against certain of the named defendants.

On January 15, 1979, the Trustee filed an Application with the Bankruptcy Court seeking express authority to expend the funds of the Debtors for costs, other than attorneys' fees, in the *Gilbert* and *Fulk* actions, asserting that "it would be in the best interest of the continued administration of these reorganization proceedings to assist in defraying the reasonable and necessary costs of maintaining" the *Fulk* and *Gilbert* actions. No notice was given to the Debtors' creditors or stockholders. In an order dated January 16, 1979, without the benefit of any hearing, the Bankruptcy Judge granted the Application. That order stated in pertinent part:

Upon the annexed Application of R.A. Gilbert, Trustee of the above-named Debtors, the Court having determined that said Application was one which might be heard *ex parte* and the Court having found as facts the matters stated in said Application; and for sufficient reasons appearing and good cause shown, it is

ORDERED, ADJUDGED AND DECREED that the Trustee be and he is hereby authorized to use the funds of the Debtors to assist in defraying the reasonable and necessary costs of maintaining the two class actions known and designated as *Gilbert, et al. v. Bagley, et al.* and *Fulk, et al. v. Bagley, et al.*, which class actions are presently pending in the United States District Court for the Middle District of North Carolina, save and except payment of professional fees of the attorneys for the class action plaintiffs.

The Clerk did not, nor was he directed to, send copies or other notice of this order to counsel for any of the creditors herein.

The ten day period within which to appeal this order expired on January 26, 1979. On February 9, 1979, David R. Johnston and the Northwestern Bank both filed Notices of Appeal from the January 16, 1979 order. On the same date, Johnston and Northwestern requested pursuant to Bankruptcy Rule 802(c) that the Bankruptcy Judge retroactively extend the ten-day period. On February 12, 1979, James R. Gilley filed his Notice of Appeal from the January 16, 1979 order, but did not request a retroactive extension of time. At a hearing on February 27, 1979, the Bankruptcy Judge denied the motions of Northwestern and Johnston for a retroactive extension of time in which to appeal. An order to that effect was entered on March 12, 1979. Northwestern filed a Notice of Appeal from the March 12, 1979 order on March 21, 1979, together with

a Designation of Record on Appeal and Statement of Issues. On March 23, 1979 Johnston filed a Notice of Appeal of the March 12, 1979 order, together with his Designation of Record on Appeal and Statement of Issues.

On appeal before this Court, therefore, are the two orders of the Bankruptcy Judge entered on March 12, 1979 and January 16, 1979, respectively. Consideration of the earlier dated order is dependent upon a reversal of the later order.

Any analysis of these questions must be predicated upon an understanding of the overall context of and relationship between the bankruptcy proceedings and the pending civil actions. The three appellants in this action, James R. Gilley, David R. Johnston, and the Northwestern Bank, are all defendants in *Gilbert*, and appellants Gilley and Northwestern are defendants in *Fulk*. Appellants Johnston and Northwestern, however, are also creditors of the bankrupt Debtors, and it is in this capacity that they are seeking to reverse the order of January 16, 1979, authorizing expenditure of the estate's funds to support the *Gilbert* and *Fulk* actions. Appellant Gilley is the majority shareholder of the Washington Group, and he is similarly interested in preventing improper use of the Debtors' limited resources. Therefore, while these appellants all may legitimately attack an order the effect of which will be dilution of the bankrupts' monies, the Court cannot help but be aware that success on the issues now pending will redound to appellants' benefit in their capacities as defendants in the civil actions.[1]

■ The threshold inquiry is whether the Bankruptcy Judge was mistaken in denying appellants' motion for a retroactive extension of the ten day appeal period. Bankruptcy Rule 802(c) requires that requests for extensions be made within the ten day period, "except that a request made after the expiration of such time may be granted upon a showing of excusable neglect." As the District Court for the Southern District of New York has noted:

> The question of excusable neglect is left to the discretion of the Bankruptcy Court Judge whose decision should not be set aside unless the 'reviewing court has a definite and firm conviction that the court below committed a clear error of judgment . . . .'

*In re Gurda*, 19 Collier Bankruptcy Cases 568, 569 (S.D.N.Y.1979) (footnotes omitted). For the reasons that follow, the Court has concluded that the Bankruptcy Court's order of M rch 12, 1979, was clearly erroneous.

■ N .ons of fundamental fairness impel a reviewing court to look closely at actions taken ex parte. This is especially so where a Trustee in Bankruptcy is asking for approval of what could be substantial expenditure of the Debtors' funds. Creditors and shareholders of the bankrupt estates have an absolutely legitimate interest in monitoring the manner in which the estate's resources are spent, and the Trustee, as their legal representative, owes them a duty to keep them informed of his activities. *See* Bankruptcy Rule 10–209. That the instant appellants also happen to be defendants in the *Bagley* and *Fulk* actions does not in any way limit their right, as creditors and shareholders, to be informed of, and in appropriate circumstances, to participate in, important actions taken by the Trustee. The Court therefore cannot help but look initially with suspicion upon the actions taken in this matter by both the Trustee and the Bankruptcy Court.

Appellants have not cited, nor has the Court in its research discovered, either a case or Bankruptcy Rule precisely on point. Other than the broad principles enunciated above, drawn from the general spirit of the bankruptcy process, Bankruptcy Rule 10–

---

1. It is interesting to note that appellant Johnston apparently is a defendant in *Gilbert* because the Washington Group bought out his family's closely held textile company and he remained on as an employee. The complaint in *Gilbert* does not allege that Johnston was an officer or director of the Washington Group, but he admits to being a stockholder, leading the Court to wonder whether he ought not to be a plaintiff rather than a defendant. This question of course is not before the Court, and the Court expresses no opinion relative thereto.

209(b)(6) seems to be the most nearly applicable provision. It provides that the Trustee shall give all creditors and stockholders at least twenty days notice of "[the] hearing on applications for . . . reimbursements of expenses." *See also* Rule 10–216. Here, of course, the Trustee was not seeking reimbursement of expenses; rather, he was asking for a blank check with which to draw an undetermined, but clearly substantial, amount from the funds of the Debtors. The Court cannot imagine a clearer instance, not explicitly covered by the Rules, in which notice to creditors and shareholders would be appropriate.

Rule 922(a) requires the Bankruptcy Court to mail notice of orders entered to any party who opposed the entry of the order. No such notice was mailed with regard to the January 16 order. The Trustee argues, however, that notice was not required because no one opposed his application. Though this may be technically correct, the Court will not penalize appellants for their failure to oppose an application submitted without notice to them and decided without giving them an opportunity to be heard.

The Trustee also argues that the January 16 order merely confirmed the authority already granted him by the Bankruptcy Court in its orders of July 11 and 25, 1978, and that, because appellants did not appeal those orders, they should not now be allowed to appeal the January 16 order. Suffice it to say that, had the July orders actually granted the Trustee the authority to use the Debtors' funds to help support the *Gilbert* and *Fulk* actions, the Court is at a loss to understand why the Trustee felt it incumbent to make further application to the Bankruptcy Court.

■ Appellants and the Trustee agree that appellants did not learn of the January 16 order until January 31. They further agree that appellants Johnston and Northwestern filed their notices of appeal nine days later. The tenth day, February 10, was a Saturday, and appellant Gilley filed his notice of appeal on Monday, February 12. This delay, with the attendant circumstances already discussed, quite clearly falls within the "excusable neglect" exception to the Rule 802(a) requirement that notices of appeal be filed within ten days. As the United States Court of Appeals for the Fourth Circuit has noted in a related context: "Failure to learn of the entry of judgment is the principal ground on which extensions of time for appeal are granted." *Babich v. Clower*, 528 F.2d 293, 295 (4th Cir. 1975). Accordingly, the March 12, 1979 order of the Bankruptcy Court denying appellants Johnston's and Northwestern's motions for extensions of time within which to appeal the order of January 16, 1979 will be vacated, and the Bankruptcy Court will be directed to grant the motions. Because the Bankruptcy Court should have allowed appellants to file notices of appeal regarding the order of January 16, the Court will now consider the appropriateness of that order.

■ As a general proposition, it is beyond dispute that the Trustee's duty is to act in the best interests of the Debtors' estate. Protection of the rights and interests of creditors and shareholders, with which the Trustee is charged, depends largely upon the success of the Trustee in managing the estate, and his actions must be calculated to bring *direct* benefit to the estate. There is of course no question regarding the Trustee's authority to sue on behalf of the estate. Expenditure of the estate's funds in this regard is entirely proper, for success by the Trustee in *Gilbert* will accrue directly to the benefit of the estate. Of concern to appellants, however, is use of the estate's resources to help prosecute actions by the shareholder plaintiffs in *Gilbert* and all the plaintiffs in *Fulk*. Should these plaintiffs prevail, not one dime of their recovery will go into the treasury of the Debtors' estate.

■ The Trustee asserts that expenditure of the estate's funds to help support the *Gilbert* action may be justified on three grounds:

(a) recovery by plaintiff stockholders in *Gilbert* would eliminate claims which might otherwise be made in the reorganization proceeding . . . ; (b) the close

interrelationship of the claims of the Trustee . . . and the shareholder plaintiffs . . . clearly indicates that a strong and vigorous prosecution of the shareholders' claims through discovery and into trial would prove to be a material benefit to the discovery and proof of evidence to support the Trustee's claims; [and] (c) proof of matters which support the basis for the claims of the plaintiff shareholders against the defendants, insofar as these claims are distinct from the Trustee's action, could . . . expedite and facilitate the objection to claims which have been filed by certain of the defendants in the reorganization proceedings.

With respect to *Fulk*, the Trustee argues that "[p]ension-related claims are entitled to special consideration in a reorganization proceeding and may even be entitled to treatment as a first priority administrative expense." He further notes that the Trustee is charged with attempting to continue operation of the Debtors' estate, and that this duty cannot be fulfilled without boosting and maintaining the morale of the employees—a task made much easier if compensation owed from employee benefit plans is paid to the employees.

Notwithstanding the apparent logic of the Trustee's arguments, his authority is strictly prescribed by the Bankruptcy Act. Congress might well have decided to grant the Trustee broad license either to sue on behalf of or provide financial assistance to third parties with claims against the estate. The Court has concluded, however, that the Bankruptcy Act contemplates a narrower range of options for the Trustee. He may only bring actions and expend funds on behalf of the estate. If he is successful, his duty is then to apportion, in accordance with the provisions of the Act, whatever recovery he reaps among the various parties with claims against the estate. Claimants of course include creditors, shareholders, and in this case employees. The high priority afforded pension-related claims does not mean the Trustee may expend funds of the estate to support a class action by employees, as meritorious as it may appear. It

means instead that, when the time comes to attempt to satisfy the obligations of the Debtors, employees thereof are entitled to stand near the front of the line. That shareholders and employees will no doubt have claims against the estate does not justify the Trustee's reaching into the estate's coffers to help them sue former officers, directors, and fiduciaries of the estate. The shareholders and employees' causes of action against these defendants are independent from whatever claims they may also wish to pursue against the estate.

The leading case in this area, cited and relied upon by both the Trustee and the appellants, is *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). As the Trustee notes in his brief, *Caplin* is a decision regarding a "Trustee's standing to sue, not . . . the appropriateness of litigation-related expenditures which may benefit the estate." That the Supreme Court did not have occasion to address this latter issue does not prevent this Court from applying to the instant case the principles on which *Caplin* rests.

*Caplin* involved a suit brought by a Chapter X Trustee, on behalf of those persons owning debentures issued by the bankrupt company, against the indenture trustee for breach of its duty owed to the debenture holders. The Trustee in *Caplin* argued, among other things, that it was in a "better position than debt investors to discover and to prosecute claims based on the alleged failure of an indenture trustee to live up to the provisions of the indenture." *Id.* at 427, 92 S.Ct. at 1684. The Court disagreed, noting that "Congress has established an elaborate system of controls with respect to indenture trustees and reorganization proceedings, and nowhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of debenture holders." *Id.* at 428, 92 S.Ct. at 1685. Then, in a passage critical to the instant case, the Court referred to 11 U.S.C. § 567(3), which is the pivotal provision of the Bankruptcy Act prescribing the

powers and duties of the Trustee, and asserted that "there is nothing in the section that enables [the Trustee] to collect money not owed to the estate." *Id.* The rationale of the Court's holding in *Caplin* is unmistakable. The Trustee may only act for the direct benefit of the estate. In asking this Court to limit *Caplin* to cases where the Trustee actually is suing on behalf of some third party claimant, as opposed to cases where the Trustee is merely footing the bill, the Trustee is requesting the Court to allow him to do indirectly what *Caplin* forbids his doing directly.[2]

For the foregoing reasons, the Court has concluded that the Bankruptcy Court's order of January 16, 1979 must be vacated, and the Trustee's application of January 15, 1979 must be denied to the extent it sought authority to use the funds of the estate to help support claims other than that brought by the Trustee.

An appropriate order shall issue.

---

**2.** At least two other courts have applied this rationale. In *Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523, 527 (9th Cir. 1976), Judge Hufstedler cited *Caplin* in summarily affirming the district court's dismissal of a suit brought by the Trustee on behalf of the Debtor's creditors and debenture purchasers: "[A] reorganization trustee has no standing to maintain the action on the part of any person or entity other than his debtor corporation."

Similarly, in *King v. Sharp*, 63 F.R.D. 60, 63 (N.D.Tex.1974), the Court noted that: "Congress has not seen fit to endow a Chapter X Trustee with the freedom to champion causes that will produce benefits to third parties. If the bankrupt estate has no cause of action in its own right, then the Trustee has no authority to institute suits as a class representative or otherwise for the benefit of third parties."