HALL, Circuit Judge,
concurring in part and dissenting in part:
I concur in the result reached by the majority opinion and with most of the reasoning the opinion contains. I write separately to elaborate on the standard of care to which bankruptcy trustees should be held when making decision affecting property of the estate. The majority opinion states that a bankruptcy trustee “has a duty to exercise that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances,” citing our prior decision in In re Cochise College Park, 703 F.2d 1339, 1357 (9th Cir.1983). While Cochise undoubtedly supports the majority opinion’s formulation of the trustee’s duties, I believe that the Supreme Court’s opinion in Commodity Futures Trading Commission v. Wein-traub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), requires us to reexamine the standards to which trustees are to be held, at least in the context of corporate debtors.
In Weintraub, the Supreme Court held that the trustee of a corporate debtor had the power to waive the debtor’s attorney-client privilege over the objections of the debtor’s management. In reaching its result, the Court relied upon well-established precedent indicating that state law and other nonbankruptcy entitlements are. to be respected absent direct guidance by the Code to the contrary. See Id. 105 S.Ct. at 1992-93; Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).[1] Nonbankruptcy entitlements are to be respected unless there is a need for a substantive change in rights in order to preserve bankruptcy’s collective proceeding.[2] Any other construction of the Code *737 would give investors[3] in the debtor the perverse incentives to enter or to resist bankruptcy solely to take advantage of or to avoid a substantive change in their rights.[4]
In reaching its result, the Court in Wein-traub reiterated the method of analysis first articulated in Butner for construing ambiguous Code provisions or for crafting bankruptcy rules when the Code is silent. The Court held:
In light of the lack of direct guidance from the Code, we turn to consider the roles played by the various actors of a corporation in bankruptcy to determine which is most analogous to the role, played by the management of a solvent corporation. See Butner v. United States, 440 U.S. 48, 55 [99 S.Ct. 914, 918, 59 L.Ed.2d 136] (1979). Because the attorney-client privilege is controlled, outside of bankruptcy, by a corporation’s management, the actor whose duties most closely resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws.[5]
Weintraub, 105 S.Ct. at 1992-93.
The Court found that in bankruptcy the trustee and not the elected management exercised functions most closely analogous to nonbarikruptcy management and that, as a result, the trustee had the power to waive the attorney-client privilege. The Court noted the sweeping managerial powers exercised by the trustee over the assets of the estate, id. at 1993, along with the similarities in the trustee’s duties to those of nonbankruptcy management. Id. at 1994. Both the trustee and nonbankruptcy management have the duty to maximize the value of the corporation’s assets for the benefit of the corporation’s residual claimants. Compare 11 U.S.C. § 704(1); Weintraub, 105 S.Ct. at 1993; In re Washington Group, Inc., 476 F.Supp. 246, 250 (M.D.N.C.1979), aff'd sub nom. Johnston v. Gilbert, 636 F.2d 1213 (4th Cir.1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3084, 69 L.Ed.2d 954 (1981) with Dodge v. Ford Motor Co., 204 Mich. 459, 507, 170 N.W. 668 (1919). Trustee election also resembles *738 the election of directors under nonbank-ruptcy law. Compare 11 U.S.C. § 702 with Del. Code Ann.tit. 8, § 211(b) (1983). Trustee removal and director removal also possess similar checks and standards. Compare 11 U.S.C. §§ 324, 1105 with Del. Code Ann. tit. 8, § 141(k), 211(b) (1983). As a result, the Court concluded that the bankruptcy trustee possessed duties so closely analogous to nonbankruptcy management that he should have the same powers as nonbankruptcy management in bankruptcy.
This method of analyzing ambiguous Code provisions applies with equal force here. While the record does not indicate whether the right of redemption belonged to the Rigdens individually or RN & S Development Corp., the issue is a critical one unless the standard of care to which bankruptcy trustees are held is the same in the context of both individual and corporate debtors.[6] Bankruptcy trustees have been held uniformly to that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances. While this standard is most certainly appropriate in the context of an individual debtor where the trustee is in a position similar to an owner of the debtor’s assets charged with the duty of distributing them under the Code according to the nonbankruptcy entitlements of each investor, see Comment, Waiver of the Attorney-Client Privilege by the Trustee in Bankruptcy, 51 U.Chi.L.Rev. 1230, 1258-59 (1984), in the context of a corporate debtor such a standard is wholly inappropriate.
The Code contains no provision delineating the duty to which trustees are to be held. My quarrel with majority opinion is simply that it did not undertake the inquiry that Weintraub requires, namely analogizing to nonbankruptcy law when the Code is ambiguous or silent, in the absence of a “bankruptcy reason” for doing otherwise. Using the Weintraub analysis and analogizing to nonbankruptcy law, I conclude that the same standard of care should be imposed upon bankruptcy trustee as that imposed upon nonbankruptcy management because of the similarities shared by non-bankruptcy corporate management and bankruptcy trustees for corporate debtors. Under this approach, the trustee’s decisions for corporate debtors concerning estate assets should be reviewed under the deferential business judgment rule.
Consequently, I would remand for a determination of whether the right of redemption was owned by the corporate debt- or or instead by the Rigdens individually. If owned by the corporate debtor, the trial court should dismiss the action against Aid-rich if his failure to redeem was a valid exercise of business judgment.

. For other Supreme Court cases relying upon state law to fix the entitlements of parties to a bankruptcy proceeding see, for example, Chicago Board of Trade v. Johnson, 264 U.S. 1, 15, 44 S.Ct. 232, 235, 68 L.Ed. 533 (1924) (upholding state law restrictions on the sale of a seat on the board of trade; “The lien, if it can be called such, is inherent in the property in its creation, and it can be asserted at any time before actual transfer.”); Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1967) ("The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition.”); Ohio v. Kovacs, 469 U.S. 274, 105 S.Ct. 705, 712, 83 L.Ed.2d 649 (1985) (holding that an order to clean up a toxic waste site was .a "claim” dischargeable under the Code because it constituted a required payment of money under state law; "Because 'Congress has generally left the determination of property rights in the assets of a bankrupt’s estate to state law,’ Butner v. United States, the classification of Ohio’s interest as either a lien on the property itself, a perfected security interest, or merely an unsecured claim depends on Ohio law. That classification — a question not before us — generally determines the priority of the State’s claim to the assets of the estate relative to other creditors. Cf. 11 U.S.C. § 545____ Thus, a State may protect its interest in the enforcement of its environmental laws by giving cleanup judgments the status of statutory liens or secured claims.”) (O’Connor, J., concurring).
For Ninth Circuit authority see, for example, In re Anchorage International Inn, 718 F.2d 1446, passim (9th Cir.1983) (Holding that state law restrictions on the sale of a liquor license applied in bankruptcy just like they did under state law; "Congress has the authority to make uniform laws governing the subject of bankruptcies ... and, pursuant to that authority, might invalidate in bankruptcy any or all pre-bank-ruptcy entitlements encumbering the debtor’s assets. But Congress has not done so____ The trustee’s contention that states cannot allow some creditors to receive more of the proceeds of the sale of a bankrupt’s assets than others receive is thus incorrect. No statutory bankruptcy policy forbids a state from giving one creditor a greater right to payment of his claim from a given asset than that conferred on another.”); In re Waterkist Corp., 775 F.2d 1089, 1091 (9th Cir.1985) (Applying state law "prohibits the debtor-in-possession from using the bankruptcy process to assume a lease or executory contract which would not have been assumable absent the bankruptcy proceedings. It also permits the debtor-in-possession the same opportunities to avoid forfeiture of a lease or executory contract that it would have received under state law absent the bankruptcy proceedings. See But-ner.").

. Cf. Butner v. United States, 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1978) (“Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests *737 should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving ‘a windfall merely by reason of the happenstance of bankruptcy.’ ... The justifications for the application of state law are not limited to ownership interests____ [Ujndefined considerations of equity provide no basis for adoption of a uniform federal rule [altering state law entitlements]”).
For a discussion of bankruptcy as a collective proceeding, see Jackson, Bankruptcy, Non-Bankruptcy Entitlements, and the Creditors' Bargain, 91 Yale L.J. 857, 859-71 (1982) (bankruptcy mechanism causes the assets of the estate to be deployed in the same manner that they would be deployed by a sole owner of the assets). See also Baird & Jackson, Corporate Reorganizations and the Treatment of Diverse Ownership Interests: A Comment on Adequate Protection of Secured Creditors in Bankruptcy, 51 U.Chi.L.Rev. 97, 101-09 (1984).

. The term "investor” includes any party with an ownership interest in the debtor’s assets. Thus, the term encompasses all creditors, stockholders, and other parties holding contingent claims. This broad definition of ownership is necessary if bankruptcy is to be understood as a collective proceeding. See Baird & Jackson, supra at 100 n. 15.

. See Butner, 440 U.S. at 55, 99 S.Ct. at 918; Baird & Jackson, supra at 97-109; Eisenberg, Bankruptcy Law in Perspective, 28 UCLA L.Rev. 953, 953-59 (1981).

. For example, the automatic stay, 11 U.S.C. § 362, changes the substantive enforcement rights of creditors for a “bankruptcy reason”— to prevent the piecemeal liquidation of assets that would be worth more when kept together. Absent such a bankruptcy interest, an investor’s rights in bankruptcy should mirror as closely as possible his nonbankruptcy entitlements.
The Court’s opinion in Butner does not expressly state that the overriding "bankruptcy reason” must be determined by Congress through the bankruptcy statute, and it seems to leave room for the courts to apply their own uniform federal rules where a "bankruptcy reason” is compelling. The Court’s opinion seems, however, to indicate that such questions can only be addressed by looking at the purposes to be served by the bankruptcy system and the way in which the incentives created by a particular rule relate to those purposes.

. The Court in Weintraub left open the question of whether a trustee could waive an individual debtor’s attorney-client privilege. See Wein-traub, 105 S.Ct. at 1995. The position of the trustee in the corporate context differs significantly from that position in the context of an individual debtor. See Comment, Waiver of the Attorney-Client Privilege by the Trustee in Bankruptcy, 51 U.Chi.L.Rev. 1230, 1258-59 (1984).