# COMMODITY FUTURES TRADING COMMISSION *v.* WEINTRAUB ET AL.

No. 84–261. Argued March 19, 1985—Decided April 29, 1985

MARSHALL, J., delivered the opinion of Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case.

*Bruce N. Kuhlik* argued the cause *pro hac vice* for petitioner. With him on the briefs were *Solicitor General Lee,*

*Deputy Solicitor General Bator, Kenneth M. Raisler, Whitney Adams,* and *Helen G. Blechman.*

*David A. Epstein* argued the cause for respondents. With him on the brief for respondents McGhee et al. was *Gary A. Weintraub, pro se.* [*]

JUSTICE MARSHALL delivered the opinion of the Court.

The question here is whether the trustee of a corporation in bankruptcy has the power to waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the petition in bankruptcy.

I

The case arises out of a formal investigation by petitioner Commodity Futures Trading Commission to determine whether Chicago Discount Commodity Brokers (CDCB), or persons associated with that firm, violated the Commodity Exchange Act, 7 U. S. C. § 1 *et seq.* CDCB was a discount commodity brokerage house registered with the Commission, pursuant to 7 U. S. C. § 6d(1), as a futures commission merchant. On October 27, 1980, the Commission filed a complaint against CDCB in the United States District Court for the Northern District of Illinois alleging violations of the Act. That same day, respondent Frank McGhee, acting as sole director and officer of CDCB, entered into a consent decree with the Commission, which provided for the appointment of a receiver and for the receiver to file a petition for liquidation under Chapter 7 of the Bankruptcy Reform Act of 1978 (Bankruptcy Code). The District Court appointed John K. Notz, Jr., as receiver.

Notz then filed a voluntary petition in bankruptcy on behalf of CDCB. He sought relief under Subchapter IV of Chapter 7 of the Bankruptcy Code, which provides for the

---

[*]*John K. Notz, Jr., pro se,* and *David F. Heroy* filed a brief for John K. Notz, Jr., Trustee, as *amicus curiae* urging reversal.

liquidation of bankrupt commodity brokers. 11 U. S. C. §§ 761–766. The Bankruptcy Court appointed Notz as interim trustee and, later, as permanent trustee.

As part of its investigation of CDCB, the Commission served a subpoena *duces tecum* upon CDCB's former counsel, respondent Gary Weintraub. The Commission sought Weintraub's testimony about various CDCB matters, including suspected misappropriation of customer funds by CDCB's officers and employees, and other fraudulent activities. Weintraub appeared for his deposition and responded to numerous inquiries but refused to answer 23 questions, asserting CDCB's attorney-client privilege. The Commission then moved to compel answers to those questions. It argued that Weintraub's assertion of the attorney-client privilege was inappropriate because the privilege could not be used to "thwart legitimate access to information sought in an administrative investigation." App. 44.

Even though the Commission argued in its motion that the matters on which Weintraub refused to testify were not protected by CDCB's attorney-client privilege, it also asked Notz to waive that privilege. In a letter to Notz, the Commission maintained that CDCB's former officers, directors, and employees no longer had the authority to assert the privilege. According to the Commission, that power was vested in Notz as the then-interim trustee. *Id.*, at 47–48. In response to the Commission's request, Notz waived "any interest I have in the attorney/client privilege possessed by that debtor for any communications or information occurring or arising on or before October 27, 1980"—the date of Notz' appointment as receiver. *Id.*, at 49.

On April 26, 1982, a United States Magistrate ordered Weintraub to testify. The Magistrate found that Weintraub had the power to assert CDCB's privilege. He added, however, that Notz was "successor in interest of all assets, rights and privileges of CDCB, including the attorney/client privilege at issue herein," and that Notz' waiver was therefore valid. App. to Pet. for Cert. 19a–20a. The District Court

upheld the Magistrate's order on June 9. *Id.*, at 18a. Thereafter, Frank McGhee and his brother, respondent Andrew McGhee, intervened and argued that Notz could not validly waive the privilege over their objection. Record, Doc. No. 49, p. 7.[1] The District Court rejected this argument and, on July 27, entered a new order requiring Weintraub to testify without asserting an attorney-client privilege on behalf of CDCB. App. to Pet. for Cert. 17a.[2]

The McGhees appealed from the District Court's order of July 27 and the Court of Appeals for the Seventh Circuit reversed. 722 F. 2d 338 (1984). It held that a bankruptcy trustee does not have the power to waive a corporate debtor's attorney-client privilege with respect to communications that occurred before the filing of the bankruptcy petition. The court recognized that two other Circuits had addressed the question and had come to the opposite conclusion. See *In re O. P. M. Leasing Services, Inc.*, 670 F. 2d 383 (CA2 1982); *Citibank, N. A.* v. *Andros*, 666 F. 2d 1192 (CA8 1981).[3] We granted certiorari to resolve the conflict. 469 U. S. 929 (1984). We now reverse the Court of Appeals.

---

[1] The Court of Appeals found that Andrew McGhee resigned his position as officer and director of CDCB on October 21, 1980. 722 F. 2d 338, 339 (1984). Frank McGhee, however, remained as an officer and director. See n. 5, *infra*.

[2] The June 9 order had not made clear that Weintraub was barred only from invoking the *corporation's* attorney-client privilege.

[3] The Court of Appeals distinguished *O. P. M. Leasing*, where waiver of the privilege was opposed by the corporation's sole voting stockholder, on the ground that the corporation in *O. P. M. Leasing* had no board of directors in existence during the tenure of the trustee. Here, instead, Frank McGhee remained an officer and director of CDCB during Notz' trusteeship. 722 F. 2d, at 341. The court acknowledged, however, a square conflict with *Citibank* v. *Andros*.

After the Court of Appeals' decision in this case, the Court of Appeals for the Ninth Circuit held that a bankruptcy examiner has the power to waive the corporation's attorney-client privilege over the objections of the debtor-in-possession. *In re Boileau*, 736 F. 2d 503 (1984). That holding also conflicts with the holding of the Seventh Circuit in this case.

## II

It is by now well established, and undisputed by the parties to this case, that the attorney-client privilege attaches to corporations as well as to individuals. *Upjohn Co.* v. *United States*, 449 U. S. 383 (1981). Both for corporations and individuals, the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice. See, *e. g.,* *Upjohn Co.* v. *United States, supra,* at 389; *Trammel* v. *United States,* 445 U. S. 40, 51 (1980); *Fisher* v. *United States,* 425 U. S. 391, 403 (1976).

The administration of the attorney-client privilege in the case of corporations, however, presents special problems. As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation. In *Upjohn Co.,* we considered whether the privilege covers only communications between counsel and top management, and decided that, under certain circumstances, communications between counsel and lower-level employees are also covered. Here, we face the related question of which corporate actors are empowered to waive the corporation's privilege.

The parties in this case agree that, for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors.[4] The managers, of

---

[4] State corporation laws generally vest management authority in a corporation's board of directors. See, *e. g.,* Del. Code Ann., Tit. 8, § 141 (1983); N. Y. Bus. Corp. Law § 701 (McKinney Supp. 1983–1984); Model Bus. Corp. Act § 35 (1979). The authority of officers derives legally from that of the board of directors. See generally Eisenberg, Legal Models of Management Structure in the Modern Corporation: Officers, Directors,

course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals. See, *e. g.*, *Dodge* v. *Ford Motor Co.*, 204 Mich. 459, 507, 170 N. W. 668, 684 (1919).

The parties also agree that when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties. See Brief for Petitioner 11; Tr. of Oral Arg. 26. See generally *In re O. P. M. Leasing Services, Inc., supra*, at 386; *Citibank* v. *Andros, supra*, at 1195; *In re Grand Jury Investigation*, 599 F. 2d 1224, 1236 (CA3 1979); *Diversified Industries, Inc.* v. *Meredith*, 572 F. 2d 596, 611, n. 5 (CA8 1978) (en banc).[5]

The dispute in this case centers on the control of the attorney-client privilege of a corporation in bankruptcy. The Government maintains that the power to exercise that privilege with respect to prebankruptcy communications passes to the bankruptcy trustee. In contrast, respondents maintain that this power remains with the debtor's directors.

## III

As might be expected given the conflict among the Courts of Appeals, the Bankruptcy Code does not explicitly address

and Accountants, 63 Calif. L. Rev. 375 (1975). The distinctions between the powers of officers and directors are not relevant to this case.

[5] It follows that Andrew McGhee, who is now neither an officer nor a director, see n. 1, *supra*, retains no control over the corporation's privilege. The remainder of this opinion therefore focuses on whether Frank McGhee has such power.

the question before us. Respondents assert that 11 U. S. C. § 542(e) is dispositive, but we find reliance on that provision misplaced. Section 542(e) states:

> "*Subject to any applicable privilege,* after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee" (emphasis added).

According to respondents, the "subject to any applicable privilege" language means that the attorney cannot be compelled to turn over to the trustee materials within the corporation's attorney-client privilege. In addition, they claim, this language would be superfluous if the trustee had the power to waive the corporation's privilege.

The statutory language does not support respondents' contentions. First, the statute says nothing about a trustee's authority to waive the corporation's attorney-client privilege. To the extent that a trustee has that power, the statute poses no bar on his ability to obtain materials within that privilege. Indeed, a privilege that has been properly waived is not an "applicable" privilege for the purposes of § 542(e).

Moreover, rejecting respondents' reading does not render the statute a nullity, as privileges of parties other than the corporation would still be "applicable" as against the trustee. For example, consistent with the statute, an attorney could invoke the personal attorney-client privilege of an individual manager.

The legislative history also makes clear that Congress did not intend to give the debtor's directors the right to assert the corporation's attorney-client privilege against the trustee. Indeed, statements made by Members of Congress regarding the effect of § 542(e) "specifically deny any attempt to create an attorney-client privilege assertable on behalf of the debtor against the trustee." *In re O. P. M. Leasing*

*Services, Inc.*, 13 B. R. 54, 70 (SDNY 1981) (Weinfeld, J.), aff'd, 670 F. 2d 383 (CA2 1982); see also 4 Collier on Bankruptcy ¶ 542.06 (15th ed. 1985). Rather, Congress intended that the courts deal with this problem:

> "The extent to which the attorney client privilege is valid against the trustee is unclear under current law and is left to be determined by the courts on a case by case basis." 124 Cong. Rec. 32400 (1978) (remarks of Rep. Edwards); *id.*, at 33999 (remarks of Sen. DeConcini).

The "subject to any applicable privilege" language is thus merely an invitation for judicial determination of privilege questions.

In addition, the legislative history establishes that § 542(e) was intended to restrict, not expand, the ability of accountants and attorneys to withhold information from the trustee. Both the House and the Senate Reports state that § 542(e) "is a new provision that deprives accountants and attorneys of the leverage that they ha[d], . . . under State law lien provisions, to receive payment in full ahead of other creditors when the information they hold is necessary to the administration of the estate." S. Rep. No. 95–989, p. 84 (1978); H. R. Rep. No. 95–595, pp. 369–370 (1977). It is therefore clear that § 542(e) was not intended to limit the trustee's ability to obtain corporate information.

## IV

In light of the lack of direct guidance from the Code, we turn to consider the roles played by the various actors of a corporation in bankruptcy to determine which is most analogous to the role played by the management of a solvent corporation. See *Butner* v. *United States*, 440 U. S. 48, 55 (1979). Because the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management, the actor whose duties most closely resemble those of manage-

ment should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws.

### A

The powers and duties of a bankruptcy trustee are extensive. Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. 11 U. S. C. §§ 323, 541. The trustee is "accountable for all property received," §§ 704(2), 1106(a)(1), and has the duty to maximize the value of the estate, see § 704(1); *In re Washington Group, Inc.*, 476 F. Supp. 246, 250 (MDNC 1979), aff'd *sub nom. Johnston* v. *Gilbert*, 636 F. 2d 1213 (CA4 1980), cert. denied, 452 U. S. 940 (1981). He is directed to investigate the debtor's financial affairs, §§ 704(4), 1106(a)(3), and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property, §§ 547(b)(4)(B), 548. Subject to court approval, he may use, sell, or lease property of the estate. § 363(b).

Moreover, in reorganization, the trustee has the power to "operate the debtor's business" unless the court orders otherwise. § 1108. Even in liquidation, the court "may authorize the trustee to operate the business" for a limited period of time. § 721. In the course of operating the debtor's business, the trustee "may enter into transactions, including the sale or lease of property of the estate" without court approval. § 363(c)(1).

As even this brief and incomplete list should indicate, the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. See 2 Collier on Bankruptcy ¶ 323.01 (15th ed. 1985). In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. §§ 521, 343. Congress contemplated that when a trustee is appointed, he assumes control of the business, and

the debtor's directors are "completely ousted." See H. R. Rep. No. 95–595, pp. 220–221 (1977).[6]

In light of the Code's allocation of responsibilities, it is clear that the trustee plays the role most closely analogous to that of a solvent corporation's management. Given that the debtor's directors retain virtually no management powers, they should not exercise the traditional management function of controlling the corporation's attorney-client privilege, see *supra,* at 348, unless a contrary arrangement would be inconsistent with policies of the bankruptcy laws.

## B

We find no federal interests that would be impaired by the trustee's control of the corporation's attorney-client privilege with respect to prebankruptcy communications. On the other hand, the rule suggested by respondents—that the debtor's directors have this power—would frustrate an important goal of the bankruptcy laws. In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors. See generally 11 U. S. C. §§ 704(4), 547, 548. It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files. To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets. The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own

---

[6] While this reference is to the role of a trustee in reorganization, nothing in the Code or its legislative history suggests that the debtor's directors enjoy substantially greater powers in liquidation.

conduct. See generally *In re Browy*, 527 F. 2d 799, 802 (CA7 1976) *(per curiam)*.

Respondents contend that the trustee can adequately investigate fraud without controlling the corporation's attorney-client privilege. They point out that the privilege does not shield the disclosure of communications relating to the planning or commission of ongoing fraud, crimes, and ordinary torts, see, *e. g., Clark* v. *United States*, 289 U. S. 1, 15 (1933); *Garner* v. *Wolfinbarger*, 430 F. 2d 1093, 1102–1103 (CA5 1970), cert. denied, 401 U. S. 974 (1971). Brief for Respondents 11. The problem, however, is making the threshold showing of fraud necessary to defeat the privilege. See *Clark* v. *United States, supra*, at 15. Without control over the privilege, the trustee might not be able to discover hidden assets or looting schemes, and therefore might not be able to make the necessary showing.

In summary, we conclude that vesting in the trustee control of the corporation's attorney-client privilege most closely comports with the allocation of the waiver power to management outside of bankruptcy without in any way obstructing the careful design of the Bankruptcy Code.

## V

Respondents do not seriously contest that the bankruptcy trustee exercises functions analogous to those exercised by management outside of bankruptcy, whereas the debtor's directors exercise virtually no management functions at all. Neither do respondents seriously dispute that vesting control over the attorney-client privilege in the trustee will facilitate the recovery of misappropriated corporate assets.

Respondents argue, however, that the trustee should not obtain control over the privilege because, unlike the management of a solvent corporation, the trustee's primary loyalty goes not to shareholders but to creditors, who elect him and who often will be the only beneficiaries of his efforts. See 11 U. S. C. §§ 702 (creditors elect trustee), 726(a) (shareholders

are last to recover in bankruptcy). Thus, they contend, as a practical matter bankruptcy trustees represent only the creditors. Brief for Respondents 22.

We are unpersuaded by this argument. First, the fiduciary duty of the trustee runs to shareholders as well as to creditors. See, *e. g., In re Washington Group, Inc.*, 476 F. Supp., at 250; *In re Ducker*, 134 F. 43, 47 (CA6 1905).[7] Second, respondents do not explain why, out of all management powers, control over the attorney-client privilege should remain with those elected by the corporation's shareholders. Perhaps most importantly, respondents' position ignores the fact that bankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors. In cases in which it is clear that the estate is not large enough to cover any shareholder claims, the trustee's exercise of the corporation's attorney-client privilege will benefit only creditors, but there is nothing anomalous in this result; rather, it is in keeping with the hierarchy of interests created by the bankruptcy laws. See generally 11 U. S. C. § 726(a).

Respondents also ignore that if a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession. *Wolf* v. *Weinstein*, 372 U. S. 633, 649–652 (1963). Indeed, the willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Id.*, at 651. Surely, then, the management of a debtor-in-possession

---

[7] The propriety of the trustee's waiver of the attorney-client privilege in a particular case can, of course, be challenged in the bankruptcy court on the ground that it violates the trustee's fiduciary duties. Respondents, however, did not challenge the waiver on those grounds; rather, they asserted that the trustee never has the power to waive the privilege.

would have to exercise control of the corporation's attorney-client privilege consistently with this obligation to treat all parties, not merely the shareholders, fairly. By the same token, when a trustee is appointed, the privilege must be exercised in accordance with the trustee's fiduciary duty to all interested parties.

To accept respondents' position would lead to one of two outcomes: (1) a rule under which the management of a debtor-in-possession exercises control of the attorney-client privilege for the benefit only of shareholders but exercises all of its other functions for the benefit of both shareholders and creditors, or (2) a rule under which the attorney-client privilege is exercised for the benefit of both creditors and shareholders when the debtor remains in possession, but is exercised for the benefit only of shareholders when a trustee is appointed. We find nothing in the bankruptcy laws that would suggest, much less compel, either of these implausible results.

## VI

Respondents' other arguments are similarly unpersuasive. First, respondents maintain that the result we reach today would also apply to *individuals* in bankruptcy, a result that respondents find "unpalatable." Brief for Respondents 27. But our holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case. As we have stated, a corporation, as an inanimate entity, must act through agents. See *supra,* at 348. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be

under some theory different from the one that we embrace in this case.

Second, respondents argue that giving the trustee control over the attorney-client privilege will have an undesirable chilling effect on attorney-client communications. According to respondents, corporate managers will be wary of speaking freely with corporate counsel if their communications might subsequently be disclosed due to bankruptcy. See Brief for Respondents 37–42; see also 722 F. 2d, at 343. But the chilling effect is no greater here than in the case of a solvent corporation, where individual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel. See *supra,* at 348–349.

Respondents also maintain that the result we reach discriminates against insolvent corporations. According to respondents, to prevent the debtor's directors from controlling the privilege amounts to "economic discrimination" given that directors, as representatives of the shareholders, control the privilege for solvent corporations. Brief for Respondents 42; see also 722 F. 2d, at 342–343. Respondents' argument misses the point that, by definition, corporations in bankruptcy are treated differently from solvent corporations. "Insolvency is a most important and material fact, not only with individuals but with corporations, and with the latter as with the former the mere fact of its existence may change radically and materially its rights and obligations." *McDonald* v. *Williams,* 174 U. S. 397, 404 (1899). Respondents do not explain why we should be particularly concerned about differential treatment in this context.

Finally, respondents maintain that upholding trustee waivers would create a disincentive for debtors to invoke the protections of bankruptcy and provide an incentive for creditors to file for involuntary bankruptcy. According to respondents, "[i]njection of such considerations into bankruptcy

358

would skew the application of the bankruptcy laws in a manner not contemplated by Congress." Brief for Respondents 43. The law creates numerous incentives, both for and against the filing of bankruptcy petitions. Respondents do not explain why our holding creates incentives that are inconsistent with congressional intent, and we do not believe that it does.

## VII

For the foregoing reasons, we hold that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications. We therefore conclude that Notz, in his capacity as trustee, properly waived CDCB's privilege in this case. The judgment of the Court of Appeals for the Seventh Circuit is accordingly reversed.

*It is so ordered.*

JUSTICE POWELL took no part in the consideration or decision of this case.