797 P.2d 1

The JNC COMPANIES, an Arizona corporation, Petitioner,

v.

The Honorable Thomas MEEHAN, a Judge for the Superior Court of the State of Arizona, County of Pima, Respondent,

and

Fred T. BOICE, in his official capacity as trustee in bankruptcy for The JNC Companies; the State of Arizona, Real Parties in Interest.

No. 2 CA-SA 90-0113.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 16, 1990.

Donald E. Gabriel, Tucson, for petitioner.

Seefeldt, Sparks & Neal, P.C. by Ralph E. Seefeldt, Tucson, for real party in interest Boice.

Stephen D. Neely, Pima Co. Atty. by Millard Rowlette, Tucson, for real party in interest State of Ariz.

## OPINION

ROLL, Presiding Judge.

Petitioner The JNC Companies (JNC) seeks special action relief from the trial court's order declaring that JNC was represented by counsel selected by JNC's trust-

ee in bankruptcy (Trustee) rather than counsel chosen by JNC's board of directors (board). Because JNC has no equally plain, speedy and adequate remedy by appeal and because we conclude that the trial court abused its discretion, we accept jurisdiction and grant relief. Ariz.R.P.Spec.Action 1, 3, 17B A.R.S.

## FACTS AND PROCEDURAL HISTORY

In September of 1987, JNC, an Arizona corporation, filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code (the Code). 11 U.S.C. §§ 1101, *et seq.* Real party in interest Fred T. Boice was appointed Trustee. In November of 1988, the Pima County Attorney's office filed a criminal complaint against JNC and Randall Jenkins, president and majority shareholder of JNC, in CR–24054, alleging numerous counts of commercial bribery, fraudulent schemes and artifices, criminal enterprise and securities fraud. In June of 1989, Jenkins filed a motion to dismiss all charges pursuant to Ariz.R.Crim.P. 16.5(b), 17 A.R.S., or in the alternative, a motion to remand for a finding of probable cause pursuant to Rule 5.5. The motion was denied in October. Jenkins sought special action relief and this court declined to accept jurisdiction.

On September 13, 1989, Jenkins, JNC and other parties were indicted on numerous felony counts, including securities law violations, in CR–28738, the underlying proceeding. The Trustee subsequently notified Jenkins of his intention to have JNC enter into a plea agreement in CR–28738 and sought authorization from the bankruptcy court. Through his bankruptcy attorney, Jenkins filed a motion in bankruptcy court opposing the Trustee's plea bargaining on behalf of JNC. Thereafter, the bankruptcy court entered a minute entry order on January 2, 1990, authorizing the Trustee to plea bargain on behalf of JNC in both pending criminal matters. During the same period of time, JNC's board retained counsel to represent JNC in the criminal proceedings. On behalf of JNC, that counsel filed a motion in superior court to dismiss, a motion for appointment of independent counsel, a motion for determination of JNC's indigency and a motion to disqualify the Trustee, seeking a ruling on whether the Trustee could proceed with the proposed JNC plea agreement.

On June 1, 1990, the board-retained JNC counsel and Jenkins filed a motion in both criminal proceedings for a change of judge for cause. On July 3, 1990, at the hearing on JNC's motion, respondent presiding judge of the Pima County Superior Court ruled that counsel retained by the Trustee properly represented JNC in Pima County Cause Nos. CR–28738 and CR–24054 and that JNC's privately retained counsel was not properly before the court. This special action followed.

## ISSUE

The sole issue before this court is whether a corporation that is a defendant in a state criminal proceeding and a debtor in a bankruptcy proceeding has the right to retain counsel of its own choosing in the criminal proceeding or whether it must accept counsel chosen by the trustee in bankruptcy and the trustee's decision to plea bargain. We conclude that the corporation's federal and state constitutional rights to counsel and to a jury trial are violated by compelling the corporation to accept counsel selected by the bankruptcy trustee and the trustee's decision to waive the right to a jury trial.

## CONSTITUTIONAL RIGHTS

■ Where, as here, a corporation is subject to criminal prosecution, it is guaranteed a right to counsel by the Sixth Amendment to the United States Constitution. *See United States v. Thevis,* 665 F.2d 616, 645 n. 35 (5th Cir.1982) and *United States v. Rad–O–Lite of Philadelphia, Inc.,* 612 F.2d 740 (3rd Cir.1979), and article II, § 24 of the Arizona constitution. "Due process of law, as it is expressed through the right-to-counsel provisions of the state and federal constitutions, comprehends a right to appear and defend with retained counsel of one's own choice." *Pipkins v. Helm,* 132 Ariz. 237, 239, 644 P.2d 1323, 1325 (App.1982). As a criminal defendant,

**146**

JNC also has the right to a jury trial. U.S. Const. amend. VI; U.S. Const. art. III, § 2, cl. 3; Ariz. Const. art. II, §§ 23 and 24.

## DUTIES AND POWERS OF BANKRUPTCY TRUSTEE

The real parties in interest, the State of Arizona and the Trustee, insist that the Trustee properly represents JNC in both the bankruptcy and criminal proceedings. The authority for this broad power over the debtor corporation, they contend, is provided by the Code, the bankruptcy rules and applicable law.

a. *Trustee's responsibilities re: the estate.*

When a bankruptcy proceeding is commenced, all corporate property passes to the bankruptcy estate and the estate is represented by the trustee. 11 U.S.C. §§ 323, 541. The trustee is accountable for that property and has the duty to maximize the estate. 11 U.S.C. § 704(1), (2). The trustee must investigate the debtor's financial affairs, 11 U.S.C. §§ 704(4), 1106(a)(3), and may sue the officers, directors and other insiders on behalf of the estate to recover fraudulent or preferential transfers of the debtor's property. 11 U.S.C. §§ 547(b)(4)(B), 548. Clearly, the trustee has broad powers in dealing with matters that relate to the estate, including the power to actively litigate matters outside bankruptcy court which have an impact upon the estate.

b. *Estate distinguishable from debtor.*

■ The estate created by the filing of a bankruptcy petition "is an entity distinct from the debtor." 8A C.J.S. Bankruptcy § 105 at 104 (1988). Not everything that belongs to the debtor becomes part of the bankruptcy estate over which the trustee has control. "The estate generally includes all legal or equitable interests of the debtor in property as of the commencement of the case...." *Id.*, citing *In re Larson*, 56 B.R. 154 (Bkrtcy.D.Mont.1985); *see also* 11 U.S.C. § 541(a)(1). We find nothing in the bankruptcy code or case law to support the conclusion that once a bankruptcy proceeding is commenced, the debtor's constitutional rights pass through to the estate along with the property and property rights that are traditionally considered part of the estate.

"The trustee has standing only to represent the interests of the estate." 8A C.J.S. Bankruptcy § 28 at 45. Indeed, § 323(a) of the Code, relied upon by the state and the Trustee, provides that the trustee "is the representative of the *estate....*" 11 U.S.C. § 323(a) (emphasis added). The Code does not purport to designate the trustee as the representative of the debtor. Accordingly, we do not believe that § 327 authorizes the trustee to retain counsel against the debtor's will to represent the debtor in a criminal proceeding in which the debtor, not the estate, is a defendant.

c. *Trustee's power to retain professionals.*

■ Section 327(a) gives the trustee the power to retain professionals "to represent or assist the trustee in carrying out the trustee's duties under [the Code]." Those duties, as described generally in § 323 and more specifically throughout the Code, relate directly to the management and preservation of the estate. Similarly, such professionals may be retained if already employed by the debtor and "necessary in the operation of [the debtor's] business," 11 U.S.C. § 327(b), and where it is in the *estate's* best interests. § 327(d), (e). Section 327 has been construed to allow the court to appoint counsel to represent the debtor in a criminal proceeding where the debtor is requesting such appointment and demonstrates that the representation will be beneficial to the estate. *See The Official Comm. of Disputed Litig. Creditors v. McDonald Invs., Inc.*, 42 B.R. 981 (N.D. Tex.1984); *In re Duque*, 33 B.R. 199 (Bkrtcy.S.D.Fla.1983); *but see In re Delk*, 27 B.R. 86 (Bkrtcy.W.D.Okla.1983) (appointment of counsel to defend debtor against indictment and use of estate funds to pay counsel do not relate to duties under the Code and are not authorized under § 327(a)); *In re Pajarito Am. Indian Art, Inc.*, 11 B.R. 807 (Bkrtcy.D.Ariz.1981) (es-

tate funds cannot be used to pay debtor's criminal defense counsel). Section 327, contrary to the contention of the state and the Trustee, does not authorize the bankruptcy trustee to compel the debtor to be represented in a criminal prosecution by counsel of the trustee's choosing over the debtor's objection, nor does it authorize the trustee to waive the criminal defendant debtor's right to a jury trial.

### d. *Bankruptcy Rule 6009.*

■ The state and the Trustee argue that Bankruptcy Rule 6009, 11 U.S.C., provides additional support for the Trustee's representation of JNC in the state criminal proceedings. The rule states:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

The rule is inapplicable, even assuming state criminal proceedings against the debtor were intended to be within its purview. The rule allows the trustee to defend actions pending at the time the bankruptcy proceeding is commenced. The proceeding below was commenced at least one year after the bankruptcy action. Moreover, the rule must be construed in harmony with the Code. The capacity to sue or be sued under § 323(b) "is a logical adjunct to the duties to be performed by the trustee and to the authority vested in him by Bankruptcy Rule 6009." 2 Collier on Bankr., § 323.02 at 323–4 (15th ed. 1990) (footnote omitted). As such, we conclude that it allows the trustee to prosecute and defend actions that impact upon the trustee's duties in managing the estate, again recognizing the separateness of the debtor and the debtor's estate.

### e. *Weintraub inapplicable.*

The state and the Trustee contend that *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), also supports their position. *Weintraub*, however, is distinguish-able because it involved the trustee's ability to waive the corporate debtor's attorney-client privilege during an investigation by the Commodity Futures Trading Commission for purposes of discovering information from corporate counsel regarding the conduct of the corporation's prior managers; it did not involve the trustee's waiver of the corporation's constitutional rights. Although Congress, in its plenary power, may abrogate certain state laws, U.S. Const. art. I, § 8, cl. 4, it may not do so in violation of constitutional rights. *See, e.g., Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589–90, 55 S.Ct. 854, 863–64, 79 L.Ed. 1593, 1604–05 (1935); *In re Penn Cent. Transp. Co.*, 494 F.2d 270, 278 (3rd Cir.1974); *United States v. Rome*, 414 F.Supp. 517, 519 (D.Mass.1976).

Applying a balancing test, the *Weintraub* Court held that allowing the trustee to waive the attorney-client privilege as to the pre-bankruptcy communications of a corporate debtor did not impair a federal interest and that certain bankruptcy goals would be frustrated if the privilege could not be waived, including the trustee's power and obligation to investigate prior management to uncover and assert causes of action against them. In *Weintraub*, the Supreme Court focused on the fact that the trustee's functions in a bankruptcy proceeding "are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors." 471 U.S. at 356, 105 S.Ct. at 1995, 85 L.Ed.2d at 383. It is the trustee that may continue operating the business. For that purpose, the pre-bankruptcy managers are "completely ousted." 471 U.S. at 352–53, 105 S.Ct. at 1993, 85 L.Ed.2d at 381.

While the Supreme Court stated that a bankruptcy trustee has broad control over the debtor, it was in the context of the management of the corporation and in the exercise of duties provided by the Code. We find no indication that *Weintraub* extends this control to a criminal proceeding against the debtor, or that *Weintraub* authorizes the trustee to exercise his/her

power over the estate at the expense of the debtor's constitutional rights.

## CONFLICT OF INTEREST

■ In addition to the fact that the trial court's order violates JNC's right to retained counsel of its own choice, *Pipkins v. Helm, supra,* the Trustee, who owes a fiduciary duty to the creditors, *see In re O.P.M. Leasing Servs., Inc.,* 28 B.R. 740 (Bkrtcy.S.D.N.Y.1983), and whose primary responsibility is to preserve the estate, has a conflict of interest that counsel retained by the corporation would not have. Indeed, JNC's admission of wrongdoing purportedly could be used as a basis for rescinding investor promissory notes, rather than forgiving them, thereby avoiding the tax burdens to such investors of having to recognize ordinary income. Additionally, the Trustee concedes in its response that the plea negotiations were conducted based upon a cost/benefit analysis of the risks involved in not accepting a plea offer, "a business decision made by the Trustee in conjunction with his duties." The Trustee admits his eagerness to accept the state's plea offer because JNC would only be fined $100, without discussion of whether the corporation, through the acts of its directors and/or shareholders, would likely be convicted of the crimes charged based upon the anticipated evidence and whether JNC, the actual defendant, had chosen to

waive its right to a jury trial. Thus, the Trustee reasons, JNC's guilty plea would avoid the risk of extensive fines and potential forfeitures which would diminish the bankruptcy estate. Additionally, the Trustee claims, a guilty plea by JNC would enable the estate to avoid the incurrence of substantial legal fees. *But see In re Pajarito Am. Indian Art, Inc., supra.*[1]

Although financial considerations appropriately dictate the Trustee's preference of alternatives, it is for this very reason that the Trustee should not control JNC's defense in the criminal prosecution. The mere fact that JNC filed a bankruptcy petition does not mean that the only counsel to which it is entitled in a criminal proceeding is one who makes decisions from purely a business perspective and based upon how to resolve the criminal matter so as to maximize the benefit to creditors. Nor does it mean that JNC must relinquish its right to a jury trial simply because the Trustee considers it a sound business decision and in the estate's best interests. When a criminal defendant is offered a plea agreement, many factors are relevant to the defendant's decision. The financial impact of proceeding to trial is but one factor to be considered. Others include the opportunity to vindicate one's name, disprove inaccurate allegations, and the likelihood of conviction. Clearly, the decision to waive the right to jury trial in a criminal

1. Although the extent to which the resolution of the criminal proceeding might impact upon JNC's bankruptcy is not material to our decision, we note that the Trustee misperceives the likely import of this court's decision. The Trustee cites no authority in support of its concerns. First, although jurisdictions are split on this issue, an Arizona bankruptcy court has held that estate funds may not be used to pay a debtor's criminal defense counsel. *In re Pajarito Am. Indian Art, Inc., supra.* Second, with regard to any forfeitures of property, there are a multitude of protections for the creditors, including the following: (1) the argument that the property is now estate property under § 541(A)(1) of the Code which includes "all legal or equitable interests of the debtor in property as of the commencement of the case"; (2) any forfeiture proceeding by the state is subject to the automatic stay provision of § 362(a), *see Sachs v. Ryan, supra,* 15 B.R. 514 (Bkrtcy.D.Md.1981) and *Sachs v. Ryan,* 32 B.R. 794 (Bkrtcy.D.Md. 1983); and (3) to the extent a forfeiture claim

could be presented as a claim against the estate, it would be subject to the priority provisions of § 507 of the Code, *see also* § 726(a) (order of distribution in the event JNC converts the proceeding to one under Chapter 7 of the Code). As a consequence, any forfeiture would be satisfied after unsecured creditors, with any deficiency remaining nondischargeable. *Cf. Sachs v. Ryan, supra,* 15 B.R. 514. Finally, with regard to the Trustee's concerns that penalties and fines would deplete the estate, the reorganization plan submitted by the Trustee pursuant to § 1123 of the Code and which may be influenced by creditors, 11 U.S.C. § 1103(c)(3), will presumably assure that such payments are made after unsecured creditors have been compensated. Moreover, in the event the proceeding is converted to a Chapter 7 proceeding, there is ample support for the proposition that such claims would be disallowed. *See Simonson v. Granquist,* 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962); *In re Diversa–Graphics, Inc.,* 8 Collier Bankr.Cas. 59 (S.D.N.Y.1976).

proceeding is the defendant's right, not the trustee's. As this state's constitution provides, "[t]he right of trial by jury shall remain inviolate." Ariz. Const. art. II, § 23.

## BANKRUPTCY COURT AUTHORIZATION OF REPRESENTATIVE

The bankruptcy court authorized the Trustee to negotiate the plea agreement on behalf of JNC. Because JNC, as opposed to its estate in bankruptcy, is the party to the criminal action and in light of our conclusions regarding the limitations on the Trustee's powers and duties, the bankruptcy court was without jurisdiction to decide who would represent JNC in the state criminal proceedings and could not authorize the Trustee to waive JNC's right to a jury trial. In *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669, 675 (1971), the Supreme Court stated:

> Since the beginning of the country's history Congress has, subject to a few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.

This policy applies equally where the federal court is acting under the Code. *In re Diversa–Graphics, Inc.*, 8 Collier Bankr. Cas. 59, 63 (S.D.N.Y.1976); *see also In re Trail West, Inc.*, 17 B.R. 330 (Bkrtcy.D.S. D.1982).

It is clear that Congress particularly intended to preclude federal bankruptcy courts from interfering with state criminal proceedings. For example, criminal proceedings against the debtor are excepted from the automatic stay provision of § 362(a). 11 U.S.C. § 362(b)(1); *see also In re M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *Trail West, Inc., supra;* 2 Collier on Bankr. 362.-05[1].

For the reasons set forth above, the bankruptcy court's action is not dispositive of the issue before us.

## CONCLUSION

We conclude that the right to counsel and the right to a jury trial under the Sixth Amendment to the United States Constitution and article II, § 24 of the Arizona Constitution must remain inviolate notwithstanding the fact that a defendant is also debtor in a bankruptcy proceeding. Because JNC's federal and state constitutional rights are violated by the trial court's order, the order is vacated, and this matter is remanded for further proceedings consistent with this decision.

LACAGNINA and HATHAWAY, JJ., concur.