UNITED STATES of America, Plaintiff

v.

Belinda M. PATRICK, Defendant

Criminal Action No. 3:93cr27.

United States District Court,
N.D. West Virginia,
Martinsburg Division.

Feb. 9, 1996.

Robert H. McWilliams, Jr., Wheeling, WV, for plaintiff.

R. Mike Mullens, Elkins, WV, Marvin D. Miller, Alexander, VA, for defendant.

## *MEMORANDUM OPINION*

MAXWELL, District Judge.

A one-count Indictment, charging embezzlement of $30,000.00 from an employee benefit plan, in violation of 18 U.S.C. § 664, was returned against the defendant on March 25, 1993. The defendant filed various pre-trial motions, including several motions to suppress.

The Court referred the pre-trial motions to United States Magistrate Judge John W. Fisher, II, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). After several hearings and submission of several preliminary proposed findings of fact and recommendations for disposition, on July 11, 1994, Magistrate Judge Fisher filed the final Proposed Findings of Fact and Recommendation for Disposition.

On July 21, 1994, the government filed a response to the July 11, 1994 report of the Magistrate Judge. The government does not object to the findings of fact and conclusions of law in the report; however, the government thought it necessary to preserve its legal arguments of "good faith" and "inevitable discovery."

On August 8, 1994, the defendant filed an appeal challenging the Magistrate Judge's November 5, 1993, and July 11, 1994 Proposed Findings of Fact and Recommendations for Disposition. This matter came on for hearing in September 1994, at which time the Court heard argument from counsel and directed the submission of supplemental memoranda of law. Counsel subsequently submitted further briefs.

As reflected in the record, it would appear that Metro Printing and Mailing Services (Metro), a Maryland corporation, with its principal place of business in Ranson, West Virginia, was engaged in the business of printing and mailing services. Larry A. Patrick, Sr., the defendant's father-in-law, was the President of this corporation, and Larry Patrick, Jr., the defendant's husband, was the Vice–President of this corporation.

According to the application for search warrant, the Government Printing Office contacted the Office of Inspector General after receiving bids from Metro and United Envelope Corporation (United) which appeared to have been signed by the same person: an individual known to be the defendant's brother-in-law.[1]

The Inspector General initiated an investigation, and using two confidential informants, gathered evidence against Metro suggesting false claims and destruction of government property. The application for search war-

rant relies upon the alleged improper actions of Larry Patrick, Sr. and Larry Patrick, Jr.

The application for search warrant also provides information relating to a Chapter 11 bankruptcy petition[2] filed on August 24, 1990, by Larry Patrick, Sr., on behalf of Metro, and a personal petition for bankruptcy filed by Larry Patrick, Sr., in October 1990. The application for search warrant alleges that, in an attempt to defraud the bankruptcy court, Metro was concealing assets in a building leased by Jefferson Press, Inc., at 22660 Executive Drive, Sterling, Virginia. Evidently, Larry Patrick, Jr., the defendant's husband, is President of Jefferson, and the defendant's brother-in-law is Vice–President of Jefferson. A bookkeeper for Metro had advised that Metro had moved all of its equipment and records from Ranson, West Virginia, to 22660 Executive Drive, Sterling, Virginia, allegedly, the corporate headquarters for Jefferson Press, Inc.[3]

On November 16, 1991, a United States Magistrate Judge for the Eastern District of Virginia issued a search warrant to be executed at 22660 Executive Drive, Suite 128 and 131, Sterling, Virginia. The description of property to be seized was set forth in attachment B and included seven numbered paragraphs. The application and affidavit for the search warrant were sealed by the Magistrate Judge and did not accompany the search warrant when it was executed.[4]

In addition to the search which was made pursuant to the above-referenced search warrant, the government also searched premises located at 201 Davis Drive, Sterling, Virginia. These premises were apparently leased to Metro. On November 15, 1991, H. Jason Gold, Interim Trustee in bankruptcy for Metro, gave permission to agents of the Government Printing Office to take custody of all books and records of Metro Printing and

---

1. In government invitations for bids, separate companies must arrive at their pricing information separately; therefore, the Government Printing Office believed that collusion might be involved.

2. This was eventually converted to a Chapter 7 bankruptcy.

3. It would appear that the charge brought against the defendant herein involves matters

which were not anticipated by the application for search warrant.

4. Despite some initial protestations from the government, Magistrate Judge Fisher subsequently determined that the defendant was entitled to inspect the application and affidavit for search warrant and ordered that it be unsealed and made part of the official record in this Court.

Mailing Services, Inc. The government, therefore, contends that a search warrant was not required for the search of the Davis Drive premises.

The suppression motions filed by the defendant challenge both searches conducted by the government: the so-called consensual search at 201 Davis Drive, Sterling, Virginia, and the search made pursuant to the search warrant at 22660 Executive Drive, Sterling, Virginia.[5]

The instant appeal raised by the defendant challenges the recommendations of the Magistrate Judge in several respects. It is urged that:

1) As to the search of the Davis Drive premises, the interim bankruptcy trustee did not have authority to consent to a search of the storage facility located at Davis Drive—a trustee cannot waive a bankrupt party's Fourth Amendment rights;

2) As to the search of the Executive Drive premises, (a) the search warrant affidavit contained intentional misrepresentations and, therefore, violated *Franks v. Delaware*, 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978); (b) the search warrant and warrant affidavit lacked particularity and were overly broad; and (c) execution of the search warrant was overbroad; and

3) As to the search of the Executive Drive premises, the government conceded that there was an insufficient basis for seizure of the items described in paragraph 6 of Attachment B to the search warrant,[6] and that such items would not be used in the case. However, the Magistrate Judge did not conduct a hearing on which of the seized items would not be used and whether other evidence is tainted by the illegal seizure. It is contended that the Govern-

ment must not be permitted to make this decision, but the Court should have a hearing in which a judicial decision is rendered.

## DAVIS DRIVE PREMISES:

▆▆▆ The Davis Drive "consensual" search raises novel questions of law, particularly, whether a bankruptcy trustee can waive the debtor's Fourth Amendment right to be free from an unreasonable search and seizure. The parties did not present nor could the Court locate authority directly "on point." However, the United States Supreme Court has held that a bankruptcy trustee can waive a debtor corporation's attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

The defendant relies strongly upon an Arizona case which narrowly construed *Weintraub*. In *JNC Companies v. Meehan*, 165 Ariz. 144, 146, 797 P.2d 1, 3 (1990), the Arizona Court of Appeals recognized that the trustee has broad powers in dealing with matters that relate to the estate, but the State appellate court found that the debtor's constitutional rights do not pass through to the estate along with the property and property rights that are traditionally considered part of the estate. In *Meehan*, the Arizona court specifically addressed *Weintraub*, finding:

> While the Supreme Court stated that a bankruptcy trustee has broad control over the debtor, it was in the context of the management of the corporation and in the exercise of duties provided by the Code. We find no indication that Weintraub extends this control to a criminal proceeding against the debtor, or that Weintraub authorizes the trustee to exercise his/her

---

**5.** As a preliminary matter, the government challenged the defendant's standing to raise a motion to suppress the evidence seized from both locations. In the Proposed Findings of Fact and Recommendation for Disposition filed on November 5, 1993, Magistrate Judge Fisher found that a valid consent was obtained for the search of the Davis Drive premises and concluded that it was unnecessary for the Court to resolve the standing question involving that search. With regard to the search of the Executive Drive

premises, the Magistrate Judge found, and recommended to the Court, that the defendant had standing to challenge the search of that premises. The government did not file objections to the Magistrate Judge's standing determination.

**6.** It will be recalled that Paragraph 6 related to business records regarding joint dealings between Jefferson Press and Metro.

power over the estate at the expense of the debtor's constitutional rights.

*Meehan,* 165 Ariz. at 147–48, 797 P.2d at 4–5.

It is important to note the factual distinctions between *Meehan, Weintraub,* and the instant case. In *Weintraub,* an administrative investigation was being conducted by the Commodity Futures Trading Commission. The Commission wanted to discover information from corporate counsel regarding the conduct of the corporation's prior managers. Corporate counsel refused to answer certain questions, asserting the corporation's attorney-client privilege. The Commission then obtained a waiver of the privilege from the bankruptcy trustee. The Supreme Court held that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications. *Weintraub,* 471 U.S. at 358, 105 S.Ct. at 1995.

In *Meehan,* the bankruptcy trustee was negotiating a plea bargain on behalf of the corporation with regard to criminal charges. The Arizona court ruled that the bankruptcy trustee could not waive the corporation's right to a jury trial or infringe upon the corporation's right to counsel of one's choice.

■ In the instant matter, the Court must determine whether a bankruptcy trustee may consent to a search of corporate property.[7] As noted by the Supreme Court, "[t]he powers and duties of a bankruptcy trustee are extensive." *Weintraub,* 471 U.S. at 352, 105 S.Ct. at 1993. Upon commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. 11 U.S.C. §§ 323, 541. The trustee is accountable for that property and has the duty to maximize the estate. 11 U.S.C. § 704(1), (2).

Given the responsibilities borne by a bankruptcy trustee, it is believed that the trustee may cooperate with a criminal investigation of the debtor corporation and may consent to a search of corporate books and records. In this case, the interim trustee authorized a special agent of the Government Printing Office to take custody of all books, records, and any and all property of any kind owned by the corporate debtor.

To the extent that the government seized corporate books, records, and property, the seizure was lawful. However, it has been suggested that the government seized property during the search of the Davis Drive premises that was not owned by the corporate debtor and/or was not corporate property which passed to the estate represented by the trustee. If this is true, it is believed that such items are subject to suppression. While it is apparent that the trustee restricted his consent to corporate property, to the extent that he may have authorized a broader search and seizure, he was without authority to do so.

Therefore, the Court adopts the Magistrate Judge's conclusion that a bankruptcy trustee may consent to a search of corporate property. However, the Court will conduct an evidentiary hearing in which it is determined whether any evidence seized from the Davis Drive premises is not Metro corporate property and, therefore, subject to exclusion.

## EXECUTIVE DRIVE PREMISES

The defendant challenges the affidavit and the search warrant executed at the Executive Drive premises. It is contended 1) that the affidavit contained intentional misrepresentations; 2) that the affidavit and the search warrant lacked particularity and were overly broad; and 3) that the execution of the search warrant was overly broad.

■ The truthfulness of factual statements made in a facially sufficient affidavit in support of a search warrant may be challenged by a defendant only under certain narrowly defined circumstances. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Under *Franks,* the defendant must satisfy a two-pronged test to obtain an evidentiary hearing. First, the defendant must make "a substantial prelimi-

---

7. The defendant also urges that the trustee was not formally appointed until after the search in question; however, it is clear from the record that H. Jason Gold was appointed interim trustee prior to the consent given. The bankruptcy law specifically provides that an interim trustee serves as a trustee. 11 U.S.C. § 701(c).

nary showing" that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77.[8] The second prong of the *Franks* test requires a court to find that the challenged statements are necessary to a finding of probable cause, i.e., if exclusion would leave the affidavit with insufficient content to establish probable cause. *Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85.

In the instant case, the Magistrate Judge found that the defendant had not satisfied the first prong of *Franks.* The Magistrate Judge found that there is no evidence that the information in the search warrant is inaccurate, that the agent intentionally withheld any facts from the magistrate judge who issued the search warrant with the intention of trying to mislead the court in determining probable cause, or that the facts contained in the search warrant affidavit create unfair or erroneous inferences in this case.

Upon a de novo review of all matters before the Court, it is believed that the magistrate judge's findings represent an accurate analysis of the applicable facts and law and that his findings on this issue should be adopted in whole.[9]

■ The defendant's argument with regard to specificity of the search warrant presents a much closer question. The Fourth Amendment bars general warrants. A warrant must particularly describe the place to be searched and the things to be seized. The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987) (footnote omitted). The warrant must clearly state what is sought, and the scope of the warrant must be limited by the probable cause on which the warrant is based. *Garrison,* 480 U.S. at 84, 107 S.Ct. at 1016.

■ In this case, the Court may not construe the warrant with reference to the affidavit because the affidavit had been sealed by the magistrate judge and did not accompany the search warrant. Affidavits which do not accompany a search warrant may not be considered in determining whether the warrant lacks particularity or is facially overbroad. *U.S. v. Washington,* 852 F.2d 803, 805 (4th Cir.1988).

■ Two attachments were, however, appended to the search warrant. Attachment A identified the premises to be searched, and Attachment B contained seven numbered paragraphs describing the property to be seized. The description of property to be seized was listed as follows:

1) Agreements, contracts, purchase orders, invoices, statements of work, payment records, memoranda, notes, correspondence, and other records and documentation relating to the work of Metro Printing and Mailing Services, Incorporated, with the United States Government.

2) Memoranda, notes, correspondence and other documentation relating to Metro Printing and Mailing Services, Incorporated, business contracts with employees and companies in relation to it's [sic] performance of government contracts.

3) Bank statements, withdrawal slips, deposit slips, checks, check stubs, and other records and documentation relating to bank accounts in the name of Metro Printing and Mailing Services, Incorporated.

4) Payroll records, time cards, accounting spread sheets, and other records and documentation relating to Metro Printing and Mailing Services, Incorporated, bankruptcy report and/or petition.

**8.** The Fourth Circuit has recognized that the *Franks* test also applies when an affiant omits material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *U.S. v. Colkley,* 899 F.2d 297, 300 (4th Cir.1990) (citation omitted).

**9.** This is not to say that the defendant has not raised some compelling questions with regard to the affidavit, none of which, however, are serious enough to warrant a *Franks* hearing.

5) Accounting records for Metro Printing and Mailing Services, Incorporated, from 1989 through present.

6) Accounting records, checks, check stubs, bank statements, payroll records, memoranda, and other records and documentation regarding any joint business dealings between Jefferson Press, Incorporated and Metro Printing and Mailing Services, Incorporated.

7) Corporate officers/employee calendars and appointment books.

The government has conceded that there is an insufficient basis for seizing the items described in paragraph 6.

Although the Magistrate Judge recognized that the warrant could not be construed with regard to the application and the affidavit which had been sealed, he concluded that the search warrant sufficiently described the items to be seized. As reflected in his July 11, 1994 Proposed Findings of Fact and Recommendation for Disposition, the Magistrate Judge found that "it [the warrant application and its supporting affidavit] provides the basis for the judicial consideration of the particularity of the search warrant."

After careful consideration and study of the facts and law, the Court has arrived at a different conclusion. The affidavit and application for the search warrant provided the issuing magistrate with probable cause for issuance of a search warrant sufficiently tailored to authorize seizure of property relevant to certain specified crimes. The requirement of specificity ensures that the executing officers will have guidelines to follow in performing the search. In this case, the executing officers were without the guidance of the application for the search warrant and its accompanying affidavit. Therefore, the specificity of the warrant is of critical importance.

The warrant and attachments at issue here did not "confine the executing officers' discretion by allowing them to seize only evidence of a particular crime." *U.S. v. Fawole,* 785 F.2d 1141, 1144 (4th Cir.1986). The warrant failed to specify the statutory references or the suspected crimes which were contained in the sealed application and affidavit.

Moreover, Attachment B, which contained the description of the property to be seized, also did not contain this information.

For example, in paragraph one of Attachment B, the executing officers are directed to seize:

Agreements, contracts, purchase orders, invoices, statements of work, payment records, memoranda, notes, correspondence, and other records and documentation relating to the work of Metro Printing and Mailing Services, Incorporated, with the United States Government.

Attachment B describes the property in generic terms, which can be acceptable given the "practical margin of flexibility" which must be applied in evaluating the specificity required for a search warrant. *U.S. v. Shilling,* 826 F.2d 1365, 1369 (4th Cir.1987).

However, when those generic terms are not accompanied by any reference to the suspected criminal conduct in the search warrant or in the description of the property, the warrant provides no guidance to the officers executing the search. The warrant contained no limitations on the documents which could be seized nor did it suggest how the documents related to specific criminal activity.

In this case, the warrant could have been made much more specific. Most obviously, the warrant and/or the property description could have specified the suspected criminal conduct. Inasmuch as the affidavit and the application for the search warrant did not accompany the executing officers, the description of property in paragraph one should have, at a minimum, concluded with a phrase which limited the seizure of the property described to that which would evidence violations of false claims, destruction of governmental property, and bid collusion relating to governmental contracts. Each paragraph in Attachment B suffers from the same defect.

Courts have consistently criticized the failure to describe in the warrant the specific criminal activity suspected. *U.S. v. Kow,* 58 F.3d 423, 427 (9th Cir.1995) (citations omitted). In addition, the warrant did not limit the scope of the seizure to a time frame within which the suspected criminal activity

took place. Only paragraph five in Attachment B contains any limitation on the dates of the documents to be seized. Given these significant defects, the warrant and its attachments did not state with particularity the property which was sought.

In addition, the lack of particularity in the warrant authorized a seizure which exceeded the probable cause supporting the warrant. There is no showing that Metro's business was permeated with crime.[10] In fact, the formerly-sealed affidavit states that there is probable cause to believe "that some of the business which MPMS conducts from 22660 Executive Drive, Suite 128/131 is criminal in nature and evidence of the crimes will be found there." The probable cause for the warrant was based upon one instance of possible bid collusion, one instance of an alleged false claim, three instances of possible destruction of government property, and possible bankruptcy fraud.

The affidavit in support of the search warrant did not aver that evidence of the suspected criminal activity was inseparable from other business records. The specificity requirement "ensures that the search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause." *Oloyede*, 982 F.2d at 138. On its face, the scope of the warrant exceeded the probable cause on which the warrant was based, and it is, therefore, overbroad. Having concluded that the warrant was overbroad and that it failed to describe with particularity the property to be seized, the warrant does not meet the constitutional specificity requirements. The warrant permitted a general search of business records which is prohibited by the Fourth Amendment to the United States Constitution, and the evidence seized pursuant to that invalid warrant must be suppressed.[11]

■ In its arguments to the Magistrate Judge during the June 27, 1994 hearing, the United States suggested that severability may be applicable. However, the Court finds that no portion of the warrant is sufficiently particularized to pass constitutional scrutiny. None of the documents sought was limited by reference to any alleged criminal activity. Even assuming a portion of the property description was sufficiently particular, severance is not available when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search. *Kow*, 58 F.3d at 428.

The Government maintains that, even if the warrant was overbroad, it was objectively reasonable for an officer executing the warrant to have relied upon it. The United States emphasizes the extensive affidavit which detailed the probable cause for issuance of the warrant.

■ Evidence seized pursuant to a facially valid search warrant which later is held to be invalid may, nevertheless, be admissible if officers conducting the search acted in good faith in reasonable reliance on the warrant. *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). The Court has determined that the warrant in this case was facially invalid, and no reasonable agent could have relied on it. In addition, the Government's "cure by affidavit" argument must be rejected under the facts of this case. The warrant did not expressly incorporate the affidavit, the affidavit was not physically attached to the warrant, and the executing officers did not give a copy of the affidavit to the owner of the premises as part of the search. *Center Art Galleries–Hawaii, Inc. v. U.S.*, 875 F.2d 747, 750 (9th Cir.1989) (citations omitted).[12] The degree

---

**10.** Where there is probable cause to believe that a business is permeated with fraud, a warrant may authorize the seizure of all documents relating to the suspected criminal area but may not authorize the seizure of any severable portion of such documents relating to legitimate activities. *U.S. v. Oloyede*, 982 F.2d 133, 141 (4th Cir.1992).

**11.** Given these conclusions, the Court need not address defendant's arguments that the execution of the warrant was overbroad.

**12.** It has been recognized that the purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the persons subject to the search what items the officers executing the warrant are entitled to seize. *Center Art*, 875 F.2d at 750, *quoting In re Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir. 1981).

of overbreadth and lack of particularity in this case precludes reasonable reliance on the warrant.

The Government also maintains that the inevitable discovery doctrine permits the admission of the evidence seized from the Executive Drive premises. The United States Supreme Court has held that the fruits of an unconstitutional search should, nevertheless, be admitted if the evidence would have been inevitably discovered by lawful means. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The Government urges that the investigating agent could have used the written consent obtained from the bankruptcy trustee to obtain the records which were located at the Executive Drive premises. It is clear, however, that the bankruptcy trustee is without authority to consent to a search of premises which were not part of the bankruptcy estate, and neither he nor the bankruptcy court could have authorized federal agents to enter those premises to search for property of the estate.[13]

Accordingly, the Court will enter an Order adopting the Magistrate Judge's Proposed Findings of Fact and Recommendation for Disposition with regard to his decision that the bankruptcy trustee possessed authority to consent to the search and seizure of Metro corporate records at the Davis Drive premises. In addition, the Order will sustain the defendant's objection with regard to the search and seizure of evidence from the Executive Drive premises. For the reasons expressed, it is believed that the search warrant was invalid and the subsequent search and seizure unconstitutional.

---

**13.** The Government also suggests that the bankruptcy court "could" have ordered the debtor to turn over all corporate records and documents, but there is no evidence that the bankruptcy court would have authorized such an order.