Richard V. KANEHL

v.

The UNITED STATES.

Cong. Ref. No. 93–647X.

United States Court of Federal Claims.

March 23, 1998.

Lawrence M. Farrell, Washington, DC, for plaintiff. Michael La Place, Baton Rouge, LA, of counsel.

Andrea I. Kelly, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

Before the Review Panel, ROBERT J. YOCK, Judge, Presiding Officer; CHRISTINE O.C. MILLER, Judge; and REGINALD W. GIBSON, Senior Judge.

## REPORT OF THE REVIEW PANEL

YOCK, Judge.

In this congressional reference case, the review panel addresses the plaintiff's challenge to the report of the hearing officer, which concluded that an award to the plaintiff would be a gratuity. The plaintiff's exceptions to the hearing officer's report have been briefed, and oral arguments were heard on January 22, 1998. The review panel has carefully considered the entire record, including the plaintiff's exceptions, and adopts the hearing officer's report.[1] The panel advises Congress that any award to the plaintiff would constitute a gratuity.

### Factual Background

Only a summary of the facts pertinent to the instant report will be set forth herein. The detailed facts are recited in the hearing officer's report, *Kanehl v. United States,* 38 Fed.Cl. 89 (1997). A comprehensive background of the circumstances leading to the instant case is incorporated in *Merchants National Bank v. United States* ("*Merchants I*"), 5 Cl.Ct. 180 (1984), and *Merchants National Bank v. United States* ("*Merchants II*"), 7 Cl.Ct. 1 (1984).

---

1. The panel makes one modification to the hearing officer's conclusions with respect to the stat-ute of limitations. *See infra* Part H.B. 1.

The plaintiff was the president and majority shareholder of Dri–Mix Products Corporation ("Dri–Mix"). In 1976, Dri–Mix entered into contracts with the Defense Logistics Agency ("DLA"). The contracts called for Dri–Mix to assemble prepackaged, Government-furnished items into Meal, Combat, Individuals ("MCIs"). The contracts also called for the Government to supply, at set intervals, the items to be incorporated into the MCIs.

The DLA did not deliver the items in the orderly manner that had been contemplated in the contracts. Dri–Mix could not assemble an MCI until each of 41 individual items had been received from the DLA. Some of those items were not furnished until several months after contract performance was to have begun. Dri–Mix was required to rent additional warehouse space in order to store some items while awaiting the arrival of the delinquent components.

Because Dri–Mix could not produce any MCIs until all 41 items had been received, the company did not receive any progress payments. Consequently, Dri–Mix was required to abandon its plan of using progress payments to finance later MCI production. The company turned to its primary financier, Merchants National Bank of Mobile ("Merchants" or "Bank"), for operating capital.

The increased costs of performance exceeded the credit that Merchants was willing to extend. Dri–Mix sought a Government-guaranteed V–Loan[2] to obtain additional credit through Merchants. Upon recommendation by the Federal Reserve Bank ("Fed"), administrator of the V–Loan program, the DLA approved the loan guarantee. The Fed, acting as fiscal agent for the DLA, then entered into the V–Loan agreement with Merchants. Merchants advanced funds to Dri–Mix pursuant to the V–Loan agreement, enabling Dri–Mix to produce MCIs once the DLA had supplied the final component.

After most of the guaranteed amount of the loan had been disbursed to Dri–Mix, the DLA revoked the loan guarantee, leaving Merchants exposed for the entire amount of the funds advanced to Dri–Mix. After reassessing the statute governing V–Loans, the DLA decided that it never had the authority to enter into V–Loans. The DLA advised Merchants that the only way to remedy the situation was to have Congress earmark money specifically for V–Loans.

The DLA assured Merchants that it would stand by the Bank, and the agency provided the necessary language for the 1978 Defense Appropriations Act that would give the DLA the authority to enter into V–Loans. The DLA also entreated Merchants to continue financing Dri–Mix until a new loan guarantee could be authorized, citing the armed services' urgent need for MCIs. Merchants cooperated with the Government by continuing to finance Dri–Mix's production of MCIs.

In fiscal year 1978, Congress appropriated $5 million for V–Loans and Merchants applied for a new V–Loan. By that time, however, Dri–Mix had delivered enough MCIs to alleviate the worldwide shortage. The DLA reneged on its assurances that it would stand by Merchants and offered a guarantee for 55 percent of the $2 million that the Bank had already extended to Dri–Mix. Under duress, the Bank accepted the terms of the guarantee, reasoning that an inadequate guarantee was better than none at all.

Dri–Mix soon reached the limit of the unguaranteed funds that Merchants was willing to extend. Out of operating capital in February 1978, it filed for Chapter 11 reorganization. Merchants attempted to negotiate with the DLA in order to continue production of MCIs, but to no avail. The Dri–Mix reorganization was converted to a liquidation bankruptcy, and, in May 1978, the Government terminated the MCI contracts for default. Dri–Mix's trustee in bankruptcy filed claims in the Armed Services Board of Contract Appeals to have the terminations changed to terminations for the convenience of the Government and for damages. The DLA counterclaimed for damages.

Merchants, the Government, and Dri–Mix's trustee in bankruptcy resolved the

2. The term "V–Loan" derived from Regulation V of the Armed Services Procurement Regulations, which described the program under which the Government would guarantee loans for working capital. *See Merchants I,* 5 Cl.Ct. at 187.

claims by entering into a settlement agreement, which was approved by the bankruptcy court on November 20, 1980. The pertinent provisions of that agreement provide:

1. *COMPROMISES WITH DLA.*

A. At closing, DLA shall pay Trustee $880,000.00 and withdraw Claim No. 851 filed herein for $5,858,573.00.

B. The compromise settlement between DLA and the Trustee is, in part, arrived at by setoff by DLA against the Trustee for the amounts of the damages to government furnished materials caused by leaking roofs while in storage in facilities leased by the Bankrupt from Teledyne Industries, Inc. and from Havatampa Corporation. Court approval and closing hereunder shall constitute, without further documentation, a transfer and set over by DLA of the said offset damages to the Trustee with the Trustee having the right to recover such damages from Teledyne Industries, Inc. and Havatampa Corporation. Promptly following closing, all documents and information establishing such damages in the possession and knowledge of DLA will be furnished by DLA to the Trustee.

C. Court approval and closing hereunder shall constitute, without further documentation, a mutual release between the Bankrupt estate and the Trustee, on one hand, and DLA on the other hand, of all legal and equitable claims and matters of every type, kind and nature whatsoever, EXCEPT as herein provided.

D. Court approval and closing hereunder shall constitute without further documentation, a mutual release, concurrence and approval, between DLA and the Bank of all claims and matters of every type, kind and nature whatsoever, EXCEPT the Bank reserves its right to relief as provided under Title 28 U.S.C. including §§ 1492 and 2509 and as set forth in Paragraph 4 herein.

E. At or promptly following closing:
    * * * *

(3) The multiple proceedings before the Armed Services Board of Contract Appeals styled "Appeals of Dri–Mix Products Corp." and the complaints of the government filed therein shall be jointly dismissed with prejudice by DLA and the Trustee at the cost of DLA.
* * * *

4. *COMPROMISES WITH BANK.*
    * * * *

D. The Bank reserves their rights against third parties (i.e. non-parties to these compromise settlements) and further reserves the Bank's right to relief as provided under Title 28 U.S.C., including §§ 1492 and 2509.

In the settlement agreement, the Bank expressly reserved the right to seek further relief, via a congressional reference case, pursuant to 28 U.S.C. §§ 1492, 2509 (1976). The Bank did actually seek such relief, and, in *Merchants I,* the hearing officer recommended that Congress authorize payment of $809,609 to Merchants in full settlement of all of the Bank's legal and equitable claims against the United States. In *Merchants II,* a panel of three judges of the United States Claims Court affirmed the recommendation of the hearing officer and recommended that the chief judge advise Congress that Merchants had an equitable, but not legal, claim against the Government for $809,609, the payment of which would not constitute a gratuity.

On September 21, 1993, the United States Senate passed Senate Resolution 108, which referred S. 974, entitled "For the relief of Richard Kanehl of Mobile, Alabama," to the chief judge of the United States Court of Federal Claims. The bill for relief provides:

For the relief of Richard Kanehl of Mobile, Alabama.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

SECTION 1. The Secretary of the Treasury shall pay, out of any money in the Treasury not otherwise appropriated, the sum of $6,563,000 to Richard Kanehl of Mobile, Alabama, for damages incurred by the said Richard Kanehl and the Dri–Mix Products Corporation of Mobile, Alabama, when such corporation incurred involuntary bankruptcy under chapter 7 of title 11, United States Code, resulting from the

termination of three related contracts with the Federal Government.

SEC. 2. (a) The payment made pursuant to the first section of this Act shall constitute full settlement of all legal and equitable claims by Richard Kanehl of Mobile, Alabama, against the United States.

(b) Nothing in this Act shall be construed as an inference of liability on the part of the United States.

SEC. 3. No part of the amount appropriated in this Act in excess of 10 percent thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this Act, and the same shall be unlawful, any contract to the contrary notwithstanding. Violation of the provisions of this section is a misdemeanor punishable by a fine not to exceed $1,000.

S. 974, 103d Cong. (1993). On October 4, 1994, the United States Senate passed Senate Resolution 258 as a supplement to Senate Resolution 108. The supplemental resolution provides:

Resolved, That, as a supplement to S. Res. 108 of the 103d Congress, the bill S. 974 entitled "A bill for the relief of Richard Kanehl of Mobile, Alabama." now pending in the Senate, together with all the accompanying papers, is referred to the chief judge of the United States Court of Federal Claims. The chief judge shall proceed with the same in accordance with the provisions of sections 1492 and 2509 of title 28, United States Code, notwithstanding the bar of any statute of limitations, laches, res judicata, collateral estoppel, or bar of sovereign immunity, and report thereon to the Senate, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States or a gratuity and the amount, if any, legally or equitably due to the claimants from the United States. In complying with this resolution, the Court of Federal Claims is requested to consider the records of any previous trial of the issues in this case, including the records of *Merchants National Bank v. United States,* 7 Cl.Ct. 1 (1984).

S. Res. 258, 103d Cong., 140 CONG. REC. § 14077 (1994).

Pursuant to the congressional reference, the plaintiff filed his Complaint in this Court and subsequently filed a motion for partial summary judgment, requesting that the hearing officer grant the plaintiff summary judgment on the issue of liability. The defendant filed a cross-motion for summary judgment. The motions were briefed, and oral arguments were heard. The hearing officer, in a thorough and well-reasoned opinion, denied the plaintiff's motion for partial summary judgment, granted the defendant's motion for summary judgment, and advised that any award given to the plaintiff would constitute a gratuity. *Kanehl,* 38 Fed.Cl. at 106. The plaintiff filed exceptions to the hearing officer's report, which have been fully briefed and argued.

*Discussion*

I. *Standard of Review*

In reviewing the hearing officer's report, this review panel serves in a role analogous to that of an appellate court. *Bear Claw Tribe, Inc. v. United States* ("*Bear Claw II*"), 37 Fed.Cl. 633, 636 (1997). In this capacity, the panel reviews the hearing officer's findings of fact under a "clearly erroneous" standard. *Merchants I,* 7 Cl.Ct. at 7. The hearing officer's legal conclusions are reviewed *de novo. Id.* at 9. Because entitlement to summary judgment is a legal conclusion, this panel reviews the hearing officer's grant of summary judgment *de novo. Costain Coal, Inc. v. United States,* 126 F.3d 1437, 1440 (Fed.Cir.1997); *Bear Claw II,* 37 Fed.Cl. at 636.

Summary judgment is appropriate if there are no material facts in dispute and if the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims, Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A motion for summary judgment "can intercede and prevent trial if the motion demonstrates that trial would be useless be-

cause additional evidence, beyond that available in connection with [the] motion, could not reasonably be expected to change the result." *INSLAW, Inc. v. United States* ("*INSLAW I*"), 35 Fed.Cl. 295, 303 (1996). The mere fact that a case is before the Court upon congressional reference does not preclude a grant of summary judgment if such disposition is otherwise appropriate. *Bear Claw Tribe, Inc. v. United States* ("*Bear Claw I*"), 36 Fed.Cl. 181, 187 (1996).

## II. *The Plaintiff's Exceptions to the Report of the Hearing Officer*

The plaintiff's exceptions challenge the hearing officer's report on two fronts. First, the plaintiff contends that the hearing officer erred in granting summary judgment on the basis of the settlement agreement that was entered into by the Government, the Bank, and Dri–Mix's trustee in bankruptcy. Second, the plaintiff argues that the hearing officer erred in granting summary judgment on the basis of the defendant's defenses of laches and statute of limitations. The panel will address each of these challenges in turn.

### A. *The Settlement Agreement*

The congressional reference statute directs the hearing officer to determine the facts surrounding a claimant's demand and to reach conclusions sufficient to inform Congress whether the demand constitutes a legal or equitable claim, or a gratuity. 28 U.S.C. § 2509(c) (1994). The hearing officer appropriately considered the facts proffered by both parties. The plaintiff directed the hearing officer to the reported decisions in *Merchants I* and *Merchants II* for his version of the facts. The plaintiff asserted that the cases represented uncontroverted facts and moved for summary judgment on the issue of liability, apparently theorizing that the two reported decisions set forth a *prima facie* case of Government liability to the plaintiff(s) [3] in the instant congressional reference case.

The fact that this case was even referred to this Court, however, reveals that liability is not as clear as the plaintiff asserts. Congress can act directly upon a private bill for relief; "[a] bill is sent to the court under the reference statute only in those situations where there is a serious question as to the merit of the claim." *Paul v. United States*, 20 Cl.Ct. 236, 265 (1990). The most beneficial function of this Court in the congressional reference process "is the clarification and determination of the many tenuous and frequently complex facts that a claimant alleges to apply to equities in the claim." *Sneeden v. United States*, 33 Fed.Cl. 303, 309 (1995). Indeed, in the instant case, the hearing officer discovered that the facts pertinent to the plaintiff's claim were more tenuous and complex than the plaintiff had alleged.

Adhering to the statutory mandate to determine facts sufficient to advise Congress as to the validity of the plaintiff's claim, the hearing officer received further undisputed facts from the defendant. The hearing officer discovered what proved to be the dispositive fact in his report: the existence of a settlement agreement. The defendant appended the settlement agreement to its cross-motion for summary judgment and argued that the agreement barred the plaintiff's claim.

The settlement agreement served as the linchpin of the hearing officer's grant of summary judgment. The plaintiff does not dispute the fact of the agreement's existence. The plaintiff offers as his ground for error his legal conclusion that the agreement binds only the trustee in bankruptcy, not

---

**3.** The identity of the plaintiff(s) has been confusing. The Senate report referring this case to the Court speaks only of Richard Kanehl. The Complaint filed by the plaintiff(s) in this case, however, lists Richard Kanehl as the complainant filing on behalf of the "Dri–Mix Group (Rev. David Barney, A.D. Barrett, Dr. Richard Barrett, William M. Lyon, and Richard V. Williams)." The hearing officer correctly noted that the Senate Resolutions relating to this case do not "contemplate payment to Richard Kanehl on behalf of anyone other than Richard Kanehl," *Kanehl*, 38 Fed.Cl. at 96, and thus only Richard Kanehl would be considered a plaintiff in this case. The exceptions filed before this panel list only Richard Kanehl as plaintiff; however, counsel of record still signs his name as Attorney for the Plaintiffs. The panel makes note of this to advise Congress that it is unclear, in the event Congress authorizes payment of a gratuity in this case, exactly who the actual beneficiaries might be.

Dri–Mix or the plaintiff, and thus the hearing officer erred in granting summary judgment on the basis of the agreement. Alternatively, the plaintiff asserts that, even if the agreement does bind him and Dri–Mix, it was inequitable for the hearing officer to grant summary judgment in favor of the Government. After careful review of the record, the panel concludes that the plaintiff's exceptions with respect to the settlement agreement are without merit and that the hearing officer properly granted summary judgment in this case.

### 1. *The Settlement Agreement Binds Dri–Mix and the Plaintiff*

■ The plaintiff's assertion that the trustee's actions are not binding on Dri–Mix or its shareholders fails as a matter of law. The hearing officer cited appropriate law, unrebutted in the plaintiff's exceptions, supporting his conclusions that a trustee in bankruptcy is authorized to act on behalf of the corporate debtor and that shareholders of the bankrupt entity are bound by the agreements entered into by the trustee. *Kanehl,* 38 Fed.Cl. at 102–03; *see also Vincel v. White Motor Corp.,* 521 F.2d 1113 (2d Cir. 1975) (affirming district court's grant of summary judgment against shareholders of bankrupt corporation on the basis that the corporation's claims were settled by the trustee in bankruptcy); *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.,* 405 F.2d 958 (5th Cir.1968) (rejecting owner of bankrupt corporation's claim that the owner should not be bound by a settlement agreement entered into by the trustee in bankruptcy). The panel finds that the hearing officer was correct in concluding that Dri–Mix and its shareholders, including the plaintiff, are bound by the settlement agreement entered into by Dri–Mix's trustee in bankruptcy.

■ Interpretation of the settlement agreement is a matter of law that is amenable to disposition by summary judgment. *Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992); *INSLAW I,* 35 Fed.Cl. at 303. On its face, the settlement agreement constitutes "a mutual release between the Bankrupt estate [Dri–Mix] and the Trustee, on one hand, and DLA on the other hand, of all legal and equitable claims and matters of every type, kind and nature whatsoever." The plain terms of the agreement reveal that there is no claim that now may be asserted by, or on behalf of, Dri–Mix. Dri–Mix released *all* claims against the Government in 1980. The bankruptcy trustee, represented by competent counsel, executed the agreement on behalf of Dri–Mix, as he was authorized to do. The Government gave substantial consideration in return for the release of all claims by Dri–Mix; it paid the trustee in bankruptcy $880,000, withdrew its $5.8 million counterclaim against Dri–Mix, and transferred its claims against third parties to the trustee. The settlement was approved by the bankruptcy court and was not challenged by Dri–Mix, Mr. Kanehl, or any other interested party. As the settlement agreement reveals, the Government has already compensated Dri–Mix for the damages that may have been occasioned by the Government's probable breach of the MCI contracts. Consequently, Dri–Mix is not entitled to further legal or equitable relief.

■ That the parties intended the agreement to preclude Dri–Mix from asserting any future legal and equitable claims, including claims via congressional reference procedures, is further evidenced by comparing the settlement language pertaining to Dri–Mix to that pertaining to Merchants. Section 1.C. of the settlement agreement recites that the settlement constitutes "a mutual release between the Bankrupt estate and the Trustee, on one hand, and DLA on the other hand, of all legal and equitable claims and matters of every type, kind and nature whatsoever." The very next sentence in the agreement, section 1.D., recites that the settlement constitutes "a mutual release, concurrence and approval, between DLA and the Bank of all claims and matters of every type, kind and nature whatsoever, EXCEPT the Bank reserves its right to relief as provided under Title 28 U.S.C. including §§ 1492 and 2509." It is apparent from the plain terms of the agreement, and through application of the maxim *expressio unius est exclusio alterius,* that the Bank negotiated to release all legal and equitable claims in the juridical sense,

while preserving its right to assert claims via congressional reference procedures. Dri–Mix, on the other hand, negotiated to release all claims "of every type, kind and nature whatsoever," which by its terms necessarily encompasses claims of a juridical type as well as claims of a congressional reference type. To adopt the plaintiff's view that Dri–Mix did not relinquish its right to claims via congressional reference procedures would be to adopt an interpretation that renders meaningless the express reservation of the Bank's right to bring a congressional reference case. The panel rejects such an unreasonable construction. *See W.M. Schlosser Co. v. United States,* 767 F.2d 870, 874 (Fed.Cir.1985) (deeming unreasonable an interpretation that would render contract language superfluous); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983) (reciting the maxim that "an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.").

Because Dri–Mix and the Government resolved all legal and equitable claims arising out of the alleged breach of the MCI contracts, no further claims may successfully be asserted against the Government by, or on behalf of, Dri–Mix. The plaintiff, nonetheless, has steadfastly contended that he is seeking relief on behalf of Dri–Mix for the damage done to Dri–Mix. *See* Pl.'s Mot. for Partial Summ. J. at 31 (asserting that the Court should "limit the remaining proceedings in this case to determining the amount of compensation, if any, Dri–Mix should receive as a result of these Government actions"); Pl.'s Opp. to Def.'s Cross Mot. for Summ. J. and Mot. to Correct Caption, and Reply to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. at 24 (asserting that "the Court must make a broad inquiry to determine whether, under the facts and circumstances of this case, it would be fair for Congress to provide compensation to Dri–Mix"); Pl.'s Exceptions to Hearing Officer's Rep. ("Pl.'s Exceptions") at 9 (contending that the panel "must address the merits of Dri–Mix's case"). As explained above, these claims for damages on behalf of Dri–Mix must fail. Dri–Mix's damages have already been resolved, the settlement agreement bars any further legal or equitable claim by or on behalf of Dri–Mix, and thus any further payment made by the Government to the plaintiff on behalf of Dri–Mix would constitute a gratuity.

The plaintiff disavowed any claim to personal damages in oral arguments before the hearing officer. *Kanehl,* 38 Fed.Cl. at 106. Before this panel, however, the plaintiff asserts that, in addition to claiming relief on behalf of Dri–Mix, he is also seeking equitable relief for the loss in value of his corporate presidency and his stock ownership in Dri–Mix. *See* Pl.'s Exceptions at 18–19. These damages, however, were also settled when the agreement was approved by the bankruptcy court in 1980.

The diminution in value of the plaintiff's interests in Dri–Mix were derivative of the damages suffered by the corporate entity. By settling the legal and equitable claims of Dri–Mix with the Government, the trustee in bankruptcy necessarily settled claims of the shareholders that were derivative of the damages suffered by the corporation. *See Vincel,* 521 F.2d at 1118 (reciting the general rule that recovery by a corporation restores the value of the entity's stock and affirming the district court's holding that a settlement entered into by the corporation's trustee in bankruptcy bound the shareholders, even though they received nothing by way of the settlement). Consequently, any further payment to the plaintiff based upon the diminution in value of his investment in Dri–Mix would also constitute a gratuity.

For these reasons, the panel's independent review brings it to the same conclusion that was reached by the hearing officer: the settlement agreement settled all of Dri–Mix's legal and equitable claims. All damages inflicted upon Dri–Mix, and derivatively upon its shareholders, by the Government's alleged breach of the MCI contracts have already been legally and equitably resolved. Consequently, any further payment to the plaintiff would constitute a gratuity. Because introduction of further factual evidence could not change either the fact of the settlement agreement's existence or the legal effect of the terms therein, the hearing officer properly granted the Government's motion

for summary judgment. *See INSLAW I*, 35 Fed.Cl. at 303 (noting that a motion for summary judgment can properly be granted "if the motion demonstrates that trial would be useless because additional evidence, beyond that available in connection with [the] motion, could not reasonably be expected to change the result.").

### 2. *It Is Not Inequitable to Hold the Plaintiff to the Settlement Agreement*

The plaintiff asserts that, even if he is bound by the settlement agreement, it would be inequitable to hold him to the terms of the agreement because the Government did not raise the defenses of accord and satisfaction, waiver, and release in its initial answer. The panel agrees with the hearing officer's conclusion that the absence of these defenses in the Government's answer did not prejudice the plaintiff and that it is not inequitable to consider the settlement agreement in evaluating the plaintiff's equitable claim. Substantial evidence in the record supports the hearing officer's factual finding that the plaintiff "was aware of the settlement negotiations prior to the settlement, and of the terms of the settlement agreement subsequent to execution." *Kanehl*, 38 Fed.Cl. at 101. Moreover, the Joint Preliminary Status Report filed with the hearing officer on June 6, 1994, related that both parties to this action believed that the settlement agreement and the doctrines of accord and satisfaction, release, and payment were relevant issues. The plaintiff has long been aware that issues surrounding the settlement agreement would impact his claim for equitable relief.

■■■ The hearing officer correctly cited this Court's prevailing view that the availability of equitable relief in a congressional reference case is restricted to those situations in which governmental wrongdoing causes harm to the claimant. *Id.* at 99; *see also Sneeden*, 33 Fed.Cl. at 309. Because all allegations of governmental wrongdoing relating to the MCI contracts were resolved by the settlement agreement, the plaintiff could now maintain an equitable claim only if there was some governmental wrongdoing involved in procuring the settlement agreement. *See,*

*e.g., id.* at 310 (plaintiff shareholders alleged that the Government coerced company into an unfair settlement by which the company released all claims against the Government). The plaintiff, however, did not contend before the hearing officer that the Government had engaged in any actionable wrongdoing in settling all legal and equitable claims arising out of the MCI contracts. *Kanehl*, 38 Fed. Cl. at 102. Consequently, the hearing officer correctly concluded that the settlement agreement must be considered in evaluating the plaintiff's equitable claim.

By entering into the settlement agreement in good faith, the Government paid for all damages allegedly caused by the defendant's wrongdoing with respect to the MCI contracts. It would be inequitable to compel the Government to pay again for damages that have already been settled in good faith. The Government bargained in 1980 for the release of all legal and equitable claims of Dri–Mix against the Government. Dri–Mix's trustee in bankruptcy, represented by competent counsel and authorized to act on behalf of Dri–Mix and its officers and shareholders, bargained to release *all* of Dri–Mix's legal *and* equitable claims in return for the Government's payment of $880,000 and the release of all of the Government's claims against Dri–Mix. Unlike Merchants, Dri–Mix did not reserve any right to further legal or equitable relief. Therefore, Dri–Mix and its shareholders, including the plaintiff, have definitively resolved all legal and equitable claims against the Government. The panel agrees with the hearing officer's observation that, if the plaintiff has any claim at all, it is against the trustee in bankruptcy, not against the Government. *See id.* at 102–03.

Contrary to the plaintiff's contention, denial of the plaintiff's equitable claim will not result in the Government's avoidance of liability for its probable breach of its contracts with Dri–Mix. The facts developed by the hearing officer make it abundantly clear that the Government has already paid substantial compensation to settle allegations of governmental wrongdoing and to obtain a release of all further legal and equitable claims. *Id.* at 104. The panel agrees with the hearing officer's rejection of the plaintiff's equitable

claim and finds that any and all equitable interests of the plaintiff were fully satisfied 18 years ago. Payment of anything further would constitute a gratuity.

### B. *Statute of Limitations and Laches*

The plaintiff's exceptions raise two related challenges with respect to the hearing officer's consideration of the affirmative defenses of statute of limitations and laches. First, the plaintiff contends that the hearing officer disregarded his obligation, under the congressional reference statute and the Senate resolutions relating to this case, to advise Congress whether or not the plaintiff would be entitled to recovery in the absence of the defenses of laches and statute of limitations. Second, the plaintiff asserts that the hearing officer erroneously granted summary judgment on the grounds of laches and statute of limitations. The panel finds both arguments to be without merit.

#### 1. *Statutory and Congressional Directives*

The congressional reference statute clearly spells out the hearing officer's responsibilities in a congressional reference case:

> The hearing officer to whom a congressional reference case is assigned by the chief judge shall proceed in accordance with the applicable rules to determine the facts, *including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed,* or facts claimed to excuse the claimant for not having resorted to any established legal remedy. He shall append to his findings of fact conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitable [sic] due from the United States to the claimant.

28 U.S.C. § 2509(c) (emphasis added). The hearing officer diligently adhered to this statutory mandate.

The hearing officer properly assessed the facts relating to the statute of limitations and, in accordance with the congressional reference statute, advised that "[a]ny possible legal claim by the plaintiff would have

accrued, at the latest, in late 1980," and that the "[p]laintiff, therefore, would be barred at law from bringing a claim against the government." *Kanehl,* 38 Fed.Cl. at 104 (citing the six-year statute of limitations established by 28 U.S.C. § 2501). The panel adopts the hearing officer's pointed findings and conclusion with respect to the statute of limitations, except to the extent that his discussion may be construed to mean that the statute of limitations would bar the plaintiff's equitable claim. *See INSLAW v. United States* ("*INSLAW II*"), 39 Fed.Cl. 307, 327–29 (1997) (concluding that the statute of limitations bars legal claims, but does not bar consideration of equitable claims). The panel agrees that the statute of limitations would bar any legal claim asserted by the plaintiff against the Government.

▮ The plaintiff maintains, however, that he is only asserting an equitable claim in this case. Although the statute of limitations does not apply to equitable claims, the doctrine of laches does apply. *See id.* Pursuant to the statutory requirement, the hearing officer assessed the facts relating to laches and advised that the plaintiff's equitable claims should be barred by that doctrine. *Kanehl,* 38 Fed.Cl. at 105–06. The panel fully agrees with and adopts the hearing officer's findings and conclusion in this regard.

▮ The settlement agreement bars any equitable claims brought by, or on behalf of, Dri–Mix. Neither Dri–Mix nor the plaintiff objected to the settlement agreement when it was executed in 1980. The panel agrees with the hearing officer's conclusion that "[n]ot having taken the opportunity [to vacate the settlement agreement] in sixteen years, it would be inequitable to require the government to defend against a claim founded upon facts occurring in the late 1970's." *Id.* at 106. Laches would thus apply to bar the plaintiff's equitable claim on behalf of Dri–Mix, as the inexcusable 16–year delay in challenging the settlement agreement would significantly prejudice the defendant. *See id.* at 105–06.

Laches would also bar the plaintiff's equitable claim for the diminution in value of his

investment in Dri–Mix. While the plaintiff intimates that he has continuously sought relief for Dri–Mix over the past 18 years (relief that is nonetheless barred by the terms of the settlement agreement), he has not even alleged that he attempted to seek relief on his own behalf during that time. For 16 years after the settlement agreement was approved by the bankruptcy court, he neither objected to the settlement agreement's alleged impact on his interests in Dri–Mix nor otherwise challenged the actions of Dri–Mix's trustee in bankruptcy, who owed a fiduciary duty to the plaintiff and to the other shareholders. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985); *Kanehl*, 38 Fed.Cl. at 103. The plaintiff's inexcusably delayed equitable claim for loss of the value of his stake in Dri–Mix would thus also be barred by laches.

In addition to the congressional reference statute, the hearing officer was required to adhere to the Senate resolutions which referred the plaintiff's claim to this Court. Particularly important is the language of Senate Resolution 258, which, in pertinent part, requests that this Court evaluate the plaintiff's claim "notwithstanding the bar of any statute of limitations [or] laches." Despite the plaintiff's protestations that the hearing officer violated this instruction, the panel concludes that the hearing officer fully complied with the Senate resolution at issue.

In compliance with the congressional reference statute, the hearing officer made findings regarding the statute of limitations and laches. He advised that, were those bars allowed to operate, they would preclude the plaintiff's legal and equitable claims. In compliance with the Senate resolution, the hearing officer also examined the undisputed facts and considered the plaintiff's claim "notwithstanding the bar of any statute of limitation [or] laches." Apart from the bars of statute of limitations and laches, the hearing officer correctly concluded that the plaintiff's claims were nonetheless precluded by

the settlement agreement and the merit-based defenses of accord and satisfaction, waiver, and release. *See supra* Part II.A. Accordingly, the panel rejects the plaintiff's argument that the hearing officer failed to fulfill his duties under the congressional reference statute or the applicable Senate resolutions.

### 2. Summary Judgment Was Not Based on Statute of Limitations or Laches

The plaintiff's final exception asserts that the hearing officer improperly based his grant of summary judgment on the grounds of laches and the statute of limitations. As discussed above and in the hearing officer's report, summary judgment was granted on the basis of the undisputed facts surrounding the existence of the settlement agreement, not on laches or the statute of limitations.[4] Consequently, the panel finds that this exception also lacks merit.

### CONCLUSION

The plaintiff's exceptions to the hearing officer's report are without merit. The hearing officer properly determined facts regarding statute of limitations and laches, as he was required to do by statute. In addition, the hearing officer complied with the applicable Senate resolutions, which instructed him to determine whether or not the plaintiff had a valid legal or equitable claim notwithstanding the bars of statute of limitations and laches. Apart from the findings relating to statute of limitations and laches, the hearing officer nonetheless determined from the undisputed facts presented by both parties that the plaintiff has no legal or equitable claim, based on the existence of the settlement agreement and the merit-based doctrines of accord and satisfaction, waiver, and release. As there were no disputed issues of material fact regarding the existence of the settlement agreement, and as the hearing officer gave the correct legal import to the terms of the agreement, the hearing officer properly granted summary judgment. The undisputed facts provided by the parties gave the

---

4. In this regard, it is noted that the hearing officer reported that the statute of limitations *would* bar the plaintiff's legal claims, had any

been asserted, and that laches *should* bar the plaintiff's equitable claims. *See Kanehl*, 38 Fed. Cl. at 104–05.

hearing officer sufficient information upon which to make an informed report to Congress.

Accordingly, after its *de novo* review of the hearing officer's grant of summary judgment, the panel affirms the hearing officer's grant of summary judgment, adopts the report of the hearing officer, and advises Congress that the plaintiff has neither a legal nor an equitable claim against the United States. The panel unanimously holds that any award made to the plaintiff would be a gratuity.